TREVELYN ZANDER, Plaintiff-Appellant, v. LORNA WHITNEY, Defendant-Appellee.

Fifth District   No. 5—91—0720

Opinion filed March 23, 1993.

Crowder & Scoggins, Ltd., of Columbia (Floyd E. Crowder and Alan G. Pirtle, of counsel), for appellant.

C. Glennon Rau, of Rau & Rau, of Columbia, for appellee.

JUSTICE WELCH delivered the opinion of the court:

Plaintiff, Trevelyn Zander, appeals from the September 4, 1991, order of the circuit court of Monroe County dismissing counts I and

III of his complaint, pursuant to sanctions authorized under Supreme Court Rule 137 (134 Ill. 2d R. 137). Plaintiff then voluntarily dismissed count II of his complaint and represents that this court has jurisdiction of the instant case pursuant to Supreme Court Rule 301 (134 Ill. 2d R. 301). Defendant, Lorna Whitney, contends that the September 4, 1991, order of the circuit court was not a final and appealable order and, accordingly, argues that this court does not have jurisdiction under Supreme Court Rule 301. In addition, defendant argues that plaintiff's appeal of this case is frivolous and in violation of Supreme Court Rule 375 (134 Ill. 2d R. 375). Before addressing any of the issues raised by plaintiff in this appeal, we will review the factual and procedural background of this case and discuss defendant's contest of this court's jurisdiction on appeal.

Plaintiff filed a three-count complaint against defendant on October 18, 1989. In count I plaintiff alleged that defendant purchased a 1989 Dodge Dynasty on April 15, 1989, and borrowed $14,404.95 from plaintiff in order to make this purchase. Plaintiff attached a copy of the sales invoice from Southtown Dodge in St. Louis, Missouri, as exhibit A to his complaint, and a copy of his check to Southtown Dodge in the amount of $14,404.95 dated April 15, 1989, as exhibit B to his complaint. Plaintiff alleged that defendant agreed to repay the loan of $14,404.95 to plaintiff but has refused to do so, that plaintiff has demanded repayment of the loan, and that defendant is indebted to plaintiff in the amount of $14,404.95.

In count II of his complaint plaintiff alleged that on March 14, 1989, defendant borrowed the sum of $800 from plaintiff in order to pay living expenses and the cost of night classes which defendant desired to attend. Plaintiff attached a copy of his check made payable to defendant in the amount of $800, dated March 14, 1989, as exhibit C to his complaint. Plaintiff alleged that he had made demand of defendant for repayment of this sum but that defendant had refused to repay the loan and claimed that defendant was indebted to him in the amount of $800.

In count III of his complaint plaintiff alleged that on April 18, 1989, in order to provide for security for the repayment of the loan described in count I of the complaint for the purchase of the 1989 Dodge Dynasty, plaintiff typed a first lien in favor of himself as trustee of the Trevelyn Zander Revocable Trust, dated September 28, 1988, on the title application for the 1989 Dodge Dynasty. Plaintiff attached a copy of the original title application with first lien to his complaint as exhibit D. Plaintiff further alleged that sometime between April 18, 1989, and July 6, 1989, defendant disregarded the un-

derstanding and agreement between them and without notice to plaintiff fraudulently altered the original title application and submitted an altered title application for the 1989 Dodge Dynasty which did not contain the first lien in favor of plaintiff. Plaintiff attached a copy of the altered title application, which had been submitted to the Illinois Secretary of State's office, as exhibit E to the complaint. Plaintiff alleged that he learned of the altered title application when he contacted the Secretary of State's office in July 1989. Plaintiff further alleged that he attempted to contact defendant regarding the altered title application but that defendant has refused to communicate with plaintiff and to pay to plaintiff any portion of the sum due him for the loan made to defendant. Plaintiff claimed that due to defendant's fraudulent conduct in submitting the altered title application to the Secretary of State's office, he had been damaged in the amount of $14,404.95, and he prayed for judgment in this amount as actual damages and for punitive damages in the amount of $15,000.

On November 21, 1989, in her answer to plaintiff's complaint, defendant filed two affirmative defenses: (1) that plaintiff gave the 1989 Dodge Dynasty to defendant as a gift and is therefore barred from recovering the 1989 Dodge Dynasty or its value from defendant; and (2) that plaintiff gave the $800 claimed in count I as a gift and is therefore barred from recovering the sum from defendant.

A bench trial of plaintiff's complaint began on August 29, 1991. Plaintiff testified that he is a resident of Arnold, Missouri, is 64 years of age, and owns a business which buys and sells aircraft propellers. Plaintiff testified that he met defendant on July 2, 1988, at his wife's funeral. Plaintiff stated that defendant told him she was also a widow and suggested that at some time in the future they could go walking together. About a week after his wife's death plaintiff and defendant began walking in the mornings together and having breakfast. Plaintiff testified that on the morning of July 22, 1988, defendant proposed marriage and that he accepted. About a month later plaintiff gave defendant an engagement ring; however, in October 1988 he discovered that defendant was seeing another man, and so he asked for the return of the engagement ring and the keys to his house.

Plaintiff testified that the relationship was revived in November 1988 when he began receiving telephone calls from defendant. Plaintiff testified that he asked defendant and her son to accompany him on a trip to Florida at Christmas, and they they had initially agreed to go, but they changed their minds and told plaintiff that they would not go with him about the time they were to leave for the trip. When plaintiff returned from Florida, he found a note at his home from

defendant which indicated that she wished to continue the relationship. He also received a letter from defendant dated January 24, 1989, which professed her love for plaintiff. A copy of the letter was introduced as plaintiff's exhibit 5. Plaintiff testified, however, that he began to suspect that he was mistaken about defendant's feelings for him in February 1989 when defendant began acting very coolly toward him. He also began to notice a certain man's car being at defendant's house when he drove by.

Plaintiff testified that on March 14, 1989, he picked defendant up from the Dupo, Illinois, high school where she was a counselor and girls' track coach. Defendant was crying because she was upset about her job, and plaintiff stated that he knew she was interested in looking for another job. Plaintiff stated that he had frequently given defendant cash and gifts because he believed she was having financial problems. Plaintiff testified that he told defendant that he would "grubstake" defendant the money she would need to quit her job, finish night school and look for another job, and he asked defendant how much money she would need to do this. Defendant told him that she drew $800 at her job every two weeks, and plaintiff testified that he wrote defendant a check for $800 along with a note which indicated that the check was an installment on her commitment to change jobs. The $800 check written by plaintiff on March 14, 1989, was admitted into evidence as plaintiff's exhibit 2A. Plaintiff testified that he received a note from defendant on Easter which indicated that she had not changed jobs but had used the $800 to cover some day-to-day expenses. Plaintiff admitted on cross-examination that there were no set terms for repayment of this loan.

Plaintiff testified that defendant had an automobile accident on April 11, 1989, and totalled her car. Plaintiff offered to provide transportation to defendant to and from school until she got another car. Defendant was upset because she did not know how she was going to finance the purchase of a new car. Plaintiff offered to take defendant to Southtown Dodge in St. Louis, Missouri, where he had previously done business. Plaintiff testified that defendant did not want to replace her wrecked vehicle with the same size automobile and picked out a larger vehicle, a 1989 Dodge Dynasty. Plaintiff had a line of credit at the Southtown Dodge dealership and wrote a check to cover the purchase of the Dodge Dynasty for $14,404.95. He stated that defendant agreed to pay over the insurance money on her wrecked automobile when she received it and that they would then arrange for payment of the balance. The check written by plaintiff on April 15, 1989, to Southtown Dodge for $14,404.95 was admitted into evidence

as plaintiff's exhibit 2. Plaintiff stated that because defendant was a "prideful lady" the car was placed solely in her name on the application for title certificate.

On April 16, 1989, plaintiff received a telephone message from defendant that stated, "I don't know that I can marry you." Plaintiff testified that this angered him because he was only attempting to be her friend at this time and was not thinking of marriage. He met defendant for lunch and asked defendant to return the car, telling her that he would stop payment on the check if necessary. The dealership told plaintiff that it could not take the car back unless defendant signed a statement of noninterest because the car was in her name. Plaintiff stated that defendant refused to sign such a statement, but he was able to pick the car up from defendant.

Plaintiff received a "thank-you" card from defendant dated April 17, 1989, and a friendship memento which were admitted into evidence as plaintiff's exhibit 12. He also admitted on cross-examination that he received a note from defendant dated April 17, 1989, which stated, "thank you so much for the car—it was the most beautiful gift I ever received in my life," and that this note was placed on the windshield of plaintiff's van. A copy of this note was admitted into evidence as defendant's exhibit 14.

Plaintiff called defendant on April 18, 1989, and asked her if she would like to take the car back and handle the financial arrangements, and defendant replied affirmatively. Plaintiff picked defendant up and drove her to his home, where the Dodge Dynasty was parked.

Plaintiff and defendant went into the house where, plaintiff told her that there had been no condition of marriage involved in the purchase of the vehicle. Plaintiff testified that they discussed the financial arrangements that were previously agreed to, that she would pay him the money for her car when it came through from the insurance company and that they would then spread out the payments on the balance. He stated that defendant told him she expected to receive at least $5,000 from the insurance company. Plaintiff then took the title application for the Dodge Dynasty into his office and typed a lien in favor of the "Trevelyn W. Zander Revocable Trust" on the application. Plaintiff testified that he made a photocopy of the title application and stapled the original to the other papers defendant received from the purchase of the car and gave them back to defendant. Plaintiff identified plaintiff's exhibit 8 as a copy of the title registration application with his lien which was added on April 18, 1989.

Plaintiff stated that he told defendant that she could do nothing with the car without his approval and that defendant agreed to this. Plaintiff's exhibit 8 was admitted into evidence without objection.

Two days later defendant called plaintiff and accused him of trying to follow her in his vehicle while she was out walking. Plaintiff testified that he called defendant a few days later because he knew she was going to the hospital in a few days for some tests, and he offered to drive her there. Defendant angrily refused, saying that she could take care of herself.

Plaintiff did not attempt to contact defendant again until May 30, 1989, when he knew she would be finished with school for the year. They did not meet at that time because he said she was busy with her night school classes. Plaintiff went out of town for three weeks and attempted to contact defendant when he returned. When plaintiff called defendant's home on June 26, 1989, he was told that defendant would be on vacation for two weeks. Plaintiff contacted the Illinois Secretary of State's office on July 5, 1989, and was told that there was no lien on the 1989 Dodge Dynasty which was registered in defendant's name with their office. Plaintiff requested a title search on the vehicle. Plaintiff's exhibit 1, a certified copy of the documents received by plaintiff from the Secretary of State's title search on the 1989 Dodge Dynasty, was admitted into evidence. It is clear that the title application filed by defendant with the Secretary of State's office is not the title application prepared by Southtown Dodge on April 15, 1989. Defendant admitted by counsel at oral argument that she had obtained a second title application from a bank in Illinois which she filled out and filed with the Secretary of State's office.

Plaintiff called defendant on July 10, 1989, but was told that she was ill and could not speak with him at that time. Plaintiff called defendant's home three times on July 12, 1989, but was unable to reach her. He received a note from defendant dated July 12, 1989, which stated that she did not want to meet with him, see him, or talk with him and wanted to end their relationship. She asked him not to call or come over to her home. A copy of the note dated July 12, 1989, was admitted into evidence as plaintiff's exhibit 6.

Plaintiff then contacted his lawyer who sent defendant a demand letter on plaintiff's behalf. A copy of the letter sent by plaintiff's attorney was admitted over objection into evidence as defendant's exhibit 1A. Plaintiff admitted that the letter did not refer to the $800 as a loan but merely stated that plaintiff "entrusted" the money to her on condition of finding a new job and because she had not done so she

should pay the advance back to plaintiff. Plaintiff also admitted that the attorney's letter does not refer to a lien on the title to the vehicle.

Plaintiff received a note from defendant dated August 8, 1989, thanking him for a subscription to a religious inspirational magazine, and he decided to make an effort to resolve the dispute between them. Plaintiff sent defendant a letter dated August 14, 1989. A copy of this letter was admitted into evidence as plaintiff's exhibit 9, and a copy of defendant's note was admitted into evidence as plaintiff's exhibit 13. The August 14, 1989, letter recites that plaintiff typed a lien on the application for title to himself but he did not keep a copy of the title application nor did he place a lien on the certificate of origin. The letter further recited plaintiff's desire that they sit down with their attorneys to resolve the matter and assured defendant that he would work with her for the repayment to be consistent with her means.

Plaintiff sent a second letter to defendant on September 2, 1989, a copy of which was admitted into evidence as plaintiff's exhibit 11. The letter recites that plaintiff was ready to move on and asked defendant to sign the enclosed "receipt." The receipt referred to plaintiff's $800 check dated March 14, 1989, entrusted to defendant and used personally. The receipt also refers to the 1989 Dodge Dynasty purchased April 15, 1989, in the amount of $14,404.95 paid totally by plaintiff, titled in defendant's name and in defendant's possession, "free and clear of any liens." The receipt further stated, "when this is signed by both parties there are no further claims to or from either party." He admitted on cross-examination that this letter did not refer to a loan for $14,404.

Plaintiff sent a third letter to defendant on September 6, 1989, which was admitted into evidence as plaintiff's exhibit 10. Attached to the letter were copies of documents purportedly from Southtown Dodge files. The first document was a copy of the title application prepared by Southtown Dodge without the lien which plaintiff later typed on the original. The second document was a copy of the title application with the lien which plaintiff stated was personally typed at his home. He stated in the letter that he pointed the lien out to defendant and thoroughly discussed and reviewed it with her as well as the fact that she was expected to pay over the money received from insurance on her car. The third document attached to the letter was a copy of the title application received by the Secretary of State's office which was obviously not the title application on which plaintiff allegedly had typed his lien. Plaintiff pointed out that the name of the

dealership was misspelled and there was no indication of any lien on the title application filed by defendant.

A copy of defendant's investment portfolio was admitted into evidence which indicated over $80,000 worth of securities. Plaintiff also testified that he learned through discovery that defendant owned her condominium worth $87,000 free and clear of any liens.

On cross-examination plaintiff admitted that he had seen Sue Maxwell at a track meet on April 14, 1989, but denied telling Maxwell that he was going to buy defendant a car. He also denied telling defendant that the car was a gift to her. Plaintiff denied that he had typed a lien on the copy of the title application he had gotten from Southtown Dodge. He repeated his earlier testimony on direct that he had photocopied a copy of the title application with the lien shown on it, had kept that copy, and had given the original back to defendant. Plaintiff testified that since that time he had made other copies of the first photocopy he had made on April 18, 1989. Plaintiff testified that exhibit D to his complaint was a copy of the title application with his lien, but he did not know if this was the first copy made on April 18, 1989, or a later copy. Exhibit D to plaintiff's complaint was admitted into evidence as defendant's exhibit 6.

Plaintiff testified that he believed the original copy made on April 18, 1989, was given to his attorney. Plaintiff agreed, however, that all photocopies had been copies of the first photocopy. Plaintiff testified that he had circled items on defendant's exhibit 6 and that a copy of the title application with these circles thereon had been attached with plaintiff's letter to defendant dated September 6, 1989. Plaintiff admitted that in his letter to defendant dated August 14, 1989, he recited that he had typed a lien on the application for title to himself but did not keep a copy of the title application and did not place a lien on the certificate of origin. Plaintiff explained that he was referring in the letter to the Missouri application which has a copy entitled "lien holder." Plaintiff also admitted that he had picked up a copy of the title application which did not have the lien notation from the Southtown Dodge dealership files just prior to the time he sent the September 6, 1989, letter to defendant.

Plaintiff also admitted that although the lien he typed on the title application was in favor of the Trevelyn W. Zander Revocable Trust, the check written to Southtown Dodge in payment for the vehicle was written on his bank account, and he did not assign the money loaned for the $14,000 purchase to this trust. He also admitted that the complaint was filed in his own name and not in the name of the trust.

Plaintiff was then asked if he did not in fact type a lien on a copy of the title application some time after April 18, 1989. Plaintiff denied that this had happened. Plaintiff was asked if it was not true that defendant's exhibit 6 (exhibit D attached to his complaint) was a totally different document from plaintiff's exhibit 8 which had previously been admitted into evidence. Although plaintiff denied that the two documents were different, counsel for defendant pointed out that the notation for the lien was obviously typed in at a different position on the two documents. Plaintiff then admitted that the two documents could not be photocopies of one another but again denied that he typed the liens at different times. Plaintiff maintained that he typed the lien on the title application on April 18, 1989, but admitted that he had previously testified that every other copy in evidence was a progeny or copy of the original photocopy of the title application with the lien affixed on April 18, 1989. Defendant asked the court to take judicial notice of the evidence submitted under oath in court and suggested that the court should strike this tainted, perjured evidence.

On redirect examination, plaintiff testified that he was familiar with Missouri title applications and stated that there is a portion of the application which is pulled out if there is a lien holder. He further testified that when he indicated in the September 6, 1989, letter to defendant that he had not kept a copy of the title application, he was referring to the snap-out copy for the lien holder. Plaintiff also testified on redirect that he was the grantor and trustee of the Trevelyn W. Zander Revocable Trust and that as he understood the trust he could place things in the trust and take them out at will.

Plaintiff again admitted on redirect that plaintiff's exhibit 8 and defendant's exhibit 6 were not identical copies. He stated, however, that attachment B to plaintiff's exhibit 10, which was the letter sent to defendant on September 6, 1989, appeared to be a copy of exhibit D to his complaint (defendant's exhibit 6). Plaintiff explained that the copy of the title application with the lien typed thereon which he made on April 18, 1989, is the document marked as plaintiff's exhibit 8 because it contains the entire front of the title application. Plaintiff further explained that when he obtained a copy of the title application from the Southtown Dodge files on September 6, 1989, which did not show the lien he affixed to the original title application on April 18, 1989, he reduced the dealership document to regular size. He then typed the lien on it before sending this document with the September 6, 1989, letter as a conformed copy of the process which had taken place on April 18, 1989.

Counsel for defendant again moved to strike plaintiff's exhibit 8 and exhibit D to plaintiff's complaint (which was marked for identification as defendant's exhibit 6), asked that counts I and III of the pleadings be struck and prayed that he be given leave to file for sanctions under Rule 137. As grounds for this relief counsel for defendant maintained that plaintiff had lied under oath and submitted tainted evidence to the court. The court asked counsel for plaintiff if there was not, in fact, contradictory testimony on direct and cross-examination on the part of plaintiff. Counsel admitted that the testimony was confusing but maintained that the conflicts had been explained. The court noted that plaintiff had admitted that the two copies showing the lien had been typed at two different times. The court granted the relief requested by counsel for defendant and struck counts I and III of the complaint. The court impounded the court file and granted counsel for defendant leave to file a motion for sanctions under Rule 137. The court appointed counsel for defendant, as officer for the court, to prepare a petition for indirect criminal contempt and ordered that a transcript of the trial testimony and court file be forwarded to the State's Attorney for his review. Counsel for plaintiff moved to dismiss count II of the complaint without prejudice, and the court allowed the motion without objection on the part of the defendant. The circuit court entered an order on September 4, 1991, dismissing counts I and III of plaintiff's complaint pursuant to Supreme Court Rule 137, allowing plaintiff's motion to voluntarily dismiss count II of the complaint without prejudice. The court further ordered that the court file and all exhibits be impounded and referred to the State's Attorney of Monroe County for review.

■ Defendant contends that this court is without jurisdiction in the instant case and that appeal of this case is frivolous and in violation of Supreme Court Rule 375 because the court's order of September 4, 1991, is not a final and appealable order. We must disagree. The granting of defendant's motion to strike, pursuant to Supreme Court Rule 137, caused the dismissal of all of plaintiff's claims against defendant except for the claim stated in count II of the complaint. Plaintiff immediately moved to dismiss this count of the complaint and the court granted plaintiff's motion without objection on the part of the defendant. At this point there were no claims on plaintiff's behalf pending before the court. The court's entry of the formal written order on September 4, 1991, affirming involuntary dismissal of counts I and III and voluntary dismissal of count II of the complaint thus made the final determination affecting the substantive issues in this civil case. The only matter left pending was a related criminal matter

not part of the civil case brought by plaintiff. Thus, the September 4, 1991, order was final and appealable under Supreme Court Rule 301, and the issues with respect to the court's dismissal of counts I and III as a Rule 137 sanction are now properly before us. Plaintiff's appeal therefore cannot be considered frivolous and in violation of Supreme Court Rule 375.

Plaintiff raises three issues for review:

(1) whether the trial court's order dismissing two of the three counts of plaintiff's complaint pursuant to Supreme Court Rule 137 was an "appropriate sanction" as required by the rule;

(2) whether the trial court's dismissal of plaintiff's complaint in the course of trial violated plaintiff's right to due process; and

(3) whether the trial court's order itself violated the express requirements for sanctions imposed pursuant to Rule 137.

Because we believe that the trial court abused its discretion in the sanctions ordered pursuant to Rule 137, we reverse.

■ Supreme Court Rule 137 (134 Ill. 2d R. 137) provides in pertinent part as follows:

"Every pleading, motion and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *** If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attor-

ney fee. All proceedings under this rule shall be within and part of the civil action in which the pleading, motion or other paper referred to has been filed, and no violation or alleged violation of this rule shall give rise to a separate cause of action, or another cause of action within the civil action in question, by, on behalf of or against any party to the civil action in question, and by, on behalf of or against any attorney involved in the civil action in question.

\*\*\*

Where a sanction is imposed under this rule, the judge shall set forth with specificity the reasons and basis of any sanction so imposed either in the judgment order itself or in a separate written order." (134 Ill. 2d R. 137.)

Rule 137, which superseded amended section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—611), is intended to prevent counsel from making assertions of fact or law without support, whether the assertions be written or oral. (*Lewy v. Koeckritz International, Inc.* (1991), 211 Ill. App. 3d 330, 334, 570 N.E.2d 361, 364.) The test is what was reasonable under the circumstances; in evaluating the conduct of an attorney or party who signs a pleading or other paper filed with the court certifying that he has made a reasonable inquiry into the basis of the pleading or other paper, the court must determine what was reasonable to believe at the time the document was presented to the trial court, rather than engage in hindsight. (*Lewy*, 211 Ill. App. 3d at 334, 570 N.E.2d at 364-65.) Illinois courts may seek guidance in Federal courts' interpretations of Federal Rule of Civil Procedure 11 in interpreting this rule permitting imposition of sanctions. (*Lewy*, 211 Ill. App. 3d at 335, 570 N.E.2d at 365.) This is so because the predecessor of Rule 137, former section 2—611 of the Code of Civil Procedure as last amended in 1986, was drawn directly from Federal Rule of Civil Procedure 11. (*Kemner v. Monsanto Co.* (1991), 217 Ill. App. 3d 188, 214, 576 N.E.2d 1146, 1162.) Under Federal Rule 11, sanctions cannot be imposed upon a party unless that party has actual knowledge that the offending paper filed constituted wrongful conduct under the rule. *Kemner*, 217 Ill. App. 3d at 214, 576 N.E.2d at 1162, citing *Cross & Cross Properties, Ltd. v. Everett Allied Co.* (2d Cir. 1989), 886 F.2d 497.

A trial court's decision to impose sanctions for interposing unfounded pleadings for an improper purpose will not be reversed absent an abuse of discretion. (*Kennedy v. Miller* (1991), 221 Ill. App. 3d 513, 525, 582 N.E.2d 200, 208.) A trial court exceeds its discretion only where no reasonable person would take the view adopted by the

trial court; if reasonable persons could differ as to the propriety of the trial court's actions, then a reviewing court cannot say that the trial court exceeded its discretion. (*Lewy*, 211 Ill. App. 3d at 334-35, 570 N.E.2d at 365.) We also note that the predicate to such deference is that the trial court make explicit factual findings upon which a court of review may make an informed and reasoned decision. *Bertuli v. Gaull* (1991), 215 Ill. App. 3d 603, 605, 574 N.E.2d 1390, 1391.

In the instant case plaintiff testified that each copy of the application for title showing the lien which he affixed on April 18, 1989, was a progeny of the initial copy which was made that same day. He testified that exhibit D to his complaint was one of those photocopies. He later admitted under cross-examination that exhibit D to his complaint could not have been made from the same original photocopy as plaintiff's exhibit 8. On redirect he testified that exhibit D to his complaint (defendant's exhibit 6) appeared to be a copy of an attachment he prepared on or about September 6, 1989, for a letter he was sending to defendant reviewing the basis for his claim that the payment for defendant's car was a loan and not a gift. He testified that he went to the dealership and obtained a copy of the title application prepared for defendant from their files. As the lien was typed at plaintiff's home some three days later, the dealership file copy did not show plaintiff's lien. Plaintiff explained that he reduced the copy size and conformed this copy to replicate a copy of the title application after he had affixed his lien on April 18, 1989. Plaintiff inadvertently attached this conformed copy as an exhibit to his complaint but insisted that plaintiff's exhibit 8, which was introduced into evidence without objection, was a copy of the document which was prepared on April 18, 1989, showing a lien on defendant's vehicle in favor of the Trevelyn W. Zander Revocable Trust.

■ Although plaintiff's testimony in this regard was undoubtedly confusing and hardly unassailable, we disagree with the court's observation that plaintiff's testimony was contradictory and with its legal conclusion that plaintiff's testimony on direct examination warranted dismissal of counts I and III of plaintiff's complaint. First, we note that only proof of count III of plaintiff's complaint, which was based on defendant's alleged fraudulent conduct in substituting for the title application with plaintiff's lien affixed with a title application with no lien affixed, necessitated proof of the authenticity of plaintiff's exhibit D. Appropriate sanctions for misrepresentations in filing this exhibit D with the complaint could have been accomplished by the striking of this exhibit. We also note that the court did not make explicit findings either at trial or in the written order of September 4, 1991, regarding

its basis for dismissal of these two counts other than its observation that plaintiff's testimony was contradictory. Moreover, the court did not make any findings or allow any argument as to whether a less severe penalty such as the striking of the exhibit was inappropriate.

In addition, as plaintiff's testimony on redirect examination illustrates, while exhibit D was a conformed copy of the copy made of the title application with lien affixed on April 18, 1989, plaintiff reiterated that plaintiff's exhibit 8, which was admitted into evidence, was in fact a copy of the document with the lien affixed which plaintiff testified was made of the original on that date. Thus even if exhibit D had been struck as a sanction for violation of Rule 137, plaintiff's exhibit 8 could have been substituted for exhibit D to the complaint allowing count III to survive a test for legal sufficiency. We also note that defendant admitted that the title application she filed with the Secretary of State's office was not the title application prepared at the dealership, whether or not plaintiff in fact later added on April 18, 1989, his lien to that document. Moreover, at this point in the trial defendant had not yet been called to testify and so had not been questioned as to the whereabouts of the original title application which she signed at the dealership. Production of this document would conclusively prove the claim stated in count III of the complaint or, alternatively, provide grounds for a directed verdict in favor of defendant on this count. Plaintiff testified, and presumably witnesses from the dealership would also be called to testify, that this document was given to her custody when the car was purchased. We believe that this evidence, as well as any inability on defendant's part to produce the original title application, although circumstantial in nature, would have been relevant to proof of count III of plaintiff's complaint. We therefore find that the trial court abused its discretion in striking count III of the complaint because such sanction was at the very least premature at this point in the trial and because this sanction was unwarranted by the evidence.

■ Second, we note that count I of plaintiff's complaint was based on the alleged oral contract between plaintiff and defendant that plaintiff would finance defendant's purchase of the Dodge Dynasty. Plaintiff testified that they agreed that after defendant had paid over the insurance proceeds from her previous car accident he would spread out the remaining balance in payments which she could afford. Thus, the affixing of a lien on the title application and, consequently, exhibit D to the complaint were immaterial to proof of this alleged oral loan contract. Based on the objective standard of judging the reasonableness of the Rule 137 sanction, we must find that the

538

trial court abused its discretion in ordering the dismissal of count I to plaintiff's complaint because both exhibit D and plaintiff's testimony concerning this exhibit which the trial court found "contradictory" were immaterial to proof of this count of the complaint.

Accordingly, we reverse the September 4, 1991, order of the circuit court of Monroe County and remand this case for further proceedings.

Reversed and remanded.

LEWIS and RARICK, JJ., concur.