No. 3--96--0324

Consolidated with Nos. 3--96--0329; 3--96--0330 and 3--96--0565

_________________________________________________________________

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 1997

FIRST OF AMERICA TRUST ) Appeal from the Circuit Court

COMPANY, as Trustee of the ) for the 10th Judicial Circuit

John Golofsky Trust, ) Peoria County, Illinois

)

Plaintiff-Appellee, )

)

v. )

)

FIRST ILLINI BANCORP, INC., )

an Illinois corporation, )

successor by merger to FIRST )

GALESBURG NATIONAL BANK & )

TRUST COMPANY, ) No. 90 L 467

)

Defendant-Appellee, )

)

and )

)

MARJORIE RUDMAN COOPER, )

DANIEL RUDMAN and ROSE )

RUDMAN, Co-Executors of the )

Estate of MITCHELL RUDMAN, )

Deceased, ) Honorable

) John A. Barra

Defendants-Appellants. ) Judge, Presiding

_________________________________________________________________

MODIFIED UPON DENIAL OF REHEARING

JUSTICE BRESLIN delivered the opinion of the court:

_________________________________________________________________

Plaintiff First of America Trust Company (Trustee), as trustee of the John Golofsky trust, brought this action against defendants First Illini Bancorp, Inc. and the estate of Mitchell Rudman.  Each party filed an appeal and the appeals were consolidated by this court.  We affirm in part, reverse in part and remand.

FACTS

The issues on appeal arise out of the administration of the estate of John Golofsky.  The original executor of the estate was First Galesburg National Bank and Trust Company.  However, after a subsequent merger, First Illini Bancorp (Bank) became the executor of the estate.  Golofsky left a widow, Zoe Golofsky, and a daughter, Marilyn Urena, who received successive life estates under the testamentary trust.  Golofsky was also survived by two grandchildren, Jon Urena and Zoe Urena Weiss, who were remainder beneficiaries under the trust.  When he died in 1982, Golofsky owned one-half of the common stock of Brown Specialty Corporation, and Mitchell Rudman, now deceased, owned the other half.

The Bank delegated the responsibilities of running the business and finding a purchaser to Rudman.  In 1986, John Sexton offered to purchase the company for $1.6 million.  Rudman and the Bank accepted this offer.  In May 1986, over the objections of the remainder beneficiaries, the Knox County probate court authorized the Bank to sell the shares in accordance with the terms of the offer and to "execute and deliver *** such instruments of acceptance and such other instruments of transfer as may be necessary in the sale and transfer of said shares."

Thereafter, Sexton, Rudman, the Bank and Zoe Golofsky entered a stock purchase agreement.  The agreement provided warranties that the Brown Specialty Corporation financial statements were prepared in accordance with generally accepted accounting principles, that the statements fairly represented the company's financial position, that there had been no adverse change in the business, assets or financial condition of the company between December 31, 1985 and August 4, 1986, and that the inventory shown on the June 30, 1986 financial statement was valued at the lower of cost or market value.  Before the agreement was executed, Zoe Weiss, one of the remainder beneficiaries, her husband, Zeff Weiss, and Zeff's law partner, Phillip Bayt, offered to match Sexton's $1.6 million offer without any of the contingencies contained in the warranties.  Moreover, in a letter to the Bank's trust officer, Zeff Weiss pointed out that many of the warranties made in the stock purchase agreement were false.  Despite Weiss' offer and admonitions, the Bank entered the agreement with Sexton.

Following the sale of the business, Sexton sued the Bank, Rudman and Zoe Golofsky in federal court, alleging that they had breached the warranties contained in the stock purchase agreement and committed securities violations, fraud and misrepresentation.  The Bank and Rudman were represented by the same attorney, Burrell Barash.  Before trial, Rudman entered an agreement with the Bank's trust officer which provided that if a judgment was recovered against the Bank, the Bank could pursue an action for indemnity and/or contribution against Rudman and Rudman could not assert as a defense that the cross-claim should have been filed in the federal case or that the statute of limitations had run.

After trial, the jury returned a verdict in favor of Sexton for $200,000 and assessed $50,000 in punitive damages against Rudman.  The court did not enter judgment because the issue of attorney fees needed to be resolved.  However, before that issue was resolved, the parties settled the case for $375,000.  Rudman paid $212,500 and the Bank paid $162,500.  The Bank used estate assets to satisfy the settlement and to pay approximately $40,000 in attorney fees incurred in the litigation.  The parties then filed a satisfaction of judgment, but the judge refused to accept the filing because no final judgment had been entered.  Accordingly, the parties filed an order of dismissal which dismissed the case with prejudice.  All of these matters were set out clearly in the federal court docket sheet.

Sometime after the federal case was settled, the Trustee filed the instant suit on behalf of the beneficiaries against Rudman's estate (Rudman Executors) and the Bank.  The portions of the complaint relevant to this appeal sought to regain the amount expended by the Bank to settle the federal case and pay its litigation expenses.  In the counts against the Bank, the Trustee alleged that these amounts were unlawfully expended from estate assets as a direct result of the Bank's breach of fiduciary duties.  The complaint also alleged that the Rudman Executors were liable under theories of indemnity and contribution because Rudman acted as the Bank's agent.  The Trustee alleged that a judgment was entered against the Bank and the Rudman Executors in the federal case.  The Rudman Executors agreed with this allegation in their answer, but later denied the allegation in their amended answer.

The Bank responded to the Trustee's complaint by filing a counterclaim against the Rudman Executors
 for indemnity and contribution
.  The Bank alleged that if it was liable to the beneficiaries, then the Rudman Executors were liable to the Bank 
because Rudman was acting as its agent when he made the misrepresentations to Sexton
 
for indemnity and contribution
.
  In addition, the Bank raised affirmative defenses.  One affirmative defense pointed out that the probate court approved both the terms of the sale and the price.  Thus, the Bank asserted that the Trustee's claim was barred by 
res
 
judicata
.  Another affirmative defense asserted that the pendency of the probate action deprived the court of subject matter jurisdiction.  The court granted the Trustee's motion to strike the jurisdictional defense and granted the motion to strike the 
res
 
judicata
 defense to the extent that it sought to preclude relitigation of whether the terms of the sale were appropriate.  The court denied the motion as it related to the sufficiency of the sale price and whether the Bank should have retained experts to evaluate the business before the sale.  The Bank appeals both of these rulings (3--96--0329).

Eventually, all of the parties filed motions for summary judgment.  The Bank's motion for summary judgment alleged that the basis for the federal lawsuit was that the purchase price exceeded the actual value of the business and that the settlement was paid out of the trust because the trust was not entitled to receive the inflated purchase price.  Accordingly, the Bank claimed that it was proper to use trust assets to pay the settlement and attorney fees.  The court granted the Bank's motion, but only with respect to the attorney fees issue.  The Trustee appeals this ruling (3--96--0330).

In the Rudman Executors' motion for summary judgment against the Trustee and the Bank, they alleged that the provisions of the Joint Tortfeasor Contribution Act barred any contribution claim against them by either the Trustee or the Bank.  Further, the Rudman Executors alleged that the indemnity claims asserted by the Bank and the Trustee were barred as a matter of law.  The trial court granted summary judgment in favor of the Rudman Executors on the contribution counts.  Both the Bank and the Trustee appeal this ruling (3--96--0329 & 3--96--0330 respectively).  The court denied the Rudman Executors' motion for summary judgment on the indemnity counts, and we granted the Rudman Executors leave to appeal (3--96--0565) pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308).

The Rudman Executors also filed a motion for attorney fees pursuant to Supreme Court Rule 137 (134 Ill. 2d R. 137).  In that motion they pointed out that both the Trustee and the Bank filed court documents that alleged the existence of a federal court judgment against Rudman despite the fact that the federal court record clearly stated that no judgment was ever entered.  The court denied this motion, and the Rudman Executors appeal (3--96--0324).

ANALYSIS

Litigation Expenses (3--96--0330)

We address first whether the trial court erred by granting the Bank summary judgment on the issue of litigation expenses.

A fiduciary relationship exists between the executor of a will and the beneficiaries under the will (
Edwards v. Lane
, 331 Ill. 442, 451, 163 N.E. 460
, 463 (1928)), and the use of discretionary language in a will does not alter the applicable standard of care with which that discretion is to be exercised (see 
Martin v. McCune
, 318 Ill. 585, 149 N.E. 489 (1925)).  Because an executor has no authority to bind the estate by a contract, a contract entered between an executor and a third person binds the executor personally. 
Thomas v. Gouwens
, 25 Ill. App. 3d 663, 323 N.E.2d 829 (1975).  Similarly, an executor is personally liable for any liability arising from an allegedly wrongful act (
In re Estate of Wagler
, 217 Ill. App. 3d 526, 577 N.E.2d 878 (1991)), and the executor is entitled to reimbursement from the estate for such liability only if he acted with good faith and common prudence (see 
Wahl v. Schmidt
, 307 Ill. 331, 138 N.E. 604 (1923)).  An executor is not entitled to reimbursement from the estate for litigation expenses if the litigation was carried out as a result of the executor's own misconduct. 
Marshall v. Coleman
, 187 Ill. 556, 58 N.E. 628 (1900); see also 
Edwards v. Lane
, 331 Ill. 442, 451-52, 163 N.E. 460
, 463-64 (1928) (executor not entitled to reimbursement for litigation costs if litigation is carried on for the benefit of the executor rather than the estate).

A motion for summary judgment should be granted only where the pleadings, depositions, admissions and affidavits show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. 
Carruthers v. B.C. Christopher & Co.
, 57 Ill. 2d 376, 313 N.E.2d 457 (1974).  An appellate court's review of a summary judgment order must be confined to the record as it existed when the trial court ruled on the motion. 
Rayner Covering Systems, Inc. v. Danvers Farmers Elevator Co.
, 226 Ill. App. 3d 507, 589 N.E.2d 1034 (1992).  This court reviews summary judgment orders 
de
 
novo
. 
Tyler Enterprises of Elwood, Inc. v. Skiver
, 260 Ill. App. 3d 742, 633 N.E.2d 1331 (1994).

The Trustee's complaint alleged that the Bank used estate assets to satisfy its liability to Sexton for fraud and breach of contract.  The Bank was thus defending its own interests in the federal case; it was not defending the estate's assets. See 
In re Estate of Wagler
, 217 Ill. App. 3d 526, 577 N.E.2d 878 (1991) (executor personally liable for judgment arising from allegedly wrongful act); 
Thomas v. Gouwens
, 25 Ill. App. 3d 663, 323 N.E.2d 829 (1975) (executor lacks authority to bind estate by a contract
).  Accordingly, since the Trustee alleged that the Bank's liability to Sexton was based in part upon the Bank's fraudulent misrepresentations, and we can find no pleading, deposition, admission or affidavit that establishes that the Bank acted with good faith and common prudence when it made the warranties in the stock purchase agreement, there was a genuine issue of material fact as to whether it was entitled to reimbursement from the estate for its litigation expenses. See 
Marshall v. Coleman
, 187 Ill. 556, 58 N.E. 628 (1900) (
executor is not entitled to reimbursement from estate for litigation expenses if litigation was carried out as a result of misconduct on the part of the executor).  Therefore, we reverse the court's grant of summary judgment to the Bank on this issue.

The Trustee's Contribution Claim (3--96--0330)

The Trustee also argues that the court erred by granting summary judgment in favor of the Rudman Executors on the contribution claim.

Contribution applies only when two or more persons are subject to liability for the same tort. 740 ILCS 100/2(a) (West 1994).  In the instant case only the Bank and the Rudman Executors were liable for the misrepresentations which were made during the course of the sale of Brown Specialty Corporation to Sexton; neither the trust, the Trustee, nor the beneficiaries were liable or subject to liability in tort. See 
In re Estate of Wagler
, 217 Ill. App. 3d 526, 577 N.E.2d 878 (1991) (executor personally liable for any liability arising from commission of tort or breach of contract).  As such, the Trustee had no basis to pursue a claim for contribution against the  Rudman Executors.  The Rudman Executors were thus entitled to summary judgment on the contribution counts, and we affirm the court's ruling on this issue.

Res
 
Judicata
 
(3--96--0329)

The Bank claims that the probate court's approval of the sale of Brown Specialty Corporation bars relitigation of any issue related to the sale of the business.  It thus argues that the trial court erred by striking its 
res
 
judicata
 defense.

An affirmative defense is subject to the same attacks as other pleadings. See 
Betts v. Manville Personal Injury Settlement Trust
, 225 Ill. App. 3d 882, 588 N.E.2d 1193 (1992).  This court reviews the trial court's decision to strike an affirmative defense under the 
de
 
novo
 standard of review. 
Zook v. Norfolk & Western Ry. Co.
, 268 Ill. App. 3d 157, 642 N.E.2d 1348 (1994).

Under the doctrine of 
res
 
judicata
, a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent action between the same parties or their privies on the same claim, demand or cause of action. 
Fried v. Polk Brothers, Inc.
, 190 Ill. App. 3d 871, 546 N.E.2d 1160 (1989).  The doctrine does not bar relitigation of issues which were not actually decided or issues which were incidental and not essential to the prior judgment. 
In re Marriage of Potts
, 186 Ill. App. 3d 273, 542 N.E.2d 179 (1989).

The Knox County probate court approved the sale price and authorized the Bank to "execute and deliver *** such instruments of acceptance and such other instruments of transfer as may be necessary in the sale and transfer of said shares."  Although the probate court found that the Bank had not violated the prudent man standard and had not breached its fiduciary duties to the estate, it is clear that the court confined its order to the issue of the adequacy of the sale price.  Accordingly, since the beneficiaries argued in the probate court that the sale price was inadequate and that the Bank should have retained experts to evaluate the business before the sale, the Trustee cannot relitigate those issues in this case.  However, the Trustee's complaint raises matters that are unrelated to the issues that were before the probate court.

In general, the Trustee's complaint alleges that the Bank mishandled the business in such a manner that the value decreased significantly during the period after Golofsky died.  This issue is clearly distinct from the issue of whether Sexton's offer reflected the fair value of the business at the time that offer was made.  Further, the complaint alleged that the Bank mishandled the sale of the business by making false warranties in the stock purchase agreement.  Because the Bank and Rudman entered the stock purchase agreement with Sexton after the Knox County probate court approved the sale, it cannot be said that the probate court approved the false warranties which were embodied in the agreement.  In addition, the probate court's grant of authority to the Bank to deliver "such instruments of transfer as may be necessary" cannot be viewed as a ratification of the subsequent false warranties.  For these reasons, the doctrine of 
res
 
judicata
 only precludes relitigation of the sufficiency of the sale price.  We thus affirm the trial court's ruling on this issue.

Probate Court Jurisdiction (3--96--0329)

The Bank also claims that the probate court has exclusive jurisdiction over all matters related to the management of the estate and that the Trustee's case is barred by section 2--619(a)(3) of the Code of Civil Procedure, 735 ILCS 5/2--619(a)(3) (West 1994).

In support of its argument that the probate court has exclusive jurisdiction over all matters related to the management of the estate, the Bank relies on 
Quinlan v. Leech
, 5 Kan. App. 2d 706, 623 P.2d 1365 (Kan. Ct. App. 1981). In 
Quinlan
, the trial court dismissed a beneficiary's claims against the executor of an estate in order to "effectuate the public policy of allowing the [probate court] to maintain the exclusive and complete control over probate proceedings there pending." 5 Kan. App. 2d at 710, 623 P.2d at 1368.  The Kansas Court of Appeals affirmed this ruling.

To the extent that the 
Quinlan
 case was based upon the public policy of the state of Kansas, we decline to follow it.  Contrary to the public policy in Kansas, Illinois circuit courts have jurisdiction over all justiciable matters except for those limited matters over which the Supreme Court has original jurisdiction. Ill. Const. 1970, art. VI, §9.  The Bank has cited no authority for the proposition that all actions related to the management of an estate in Illinois must be filed in the court in which the will was admitted for probate.  We thus hold that the circuit court of Peoria County has subject matter jurisdiction over the case at bar.

The Bank also argues that 
Turner v. Alton Banking & Trust Co.
, 166 F.2d 305 (8th Cir. 1948) supports its position.  In 
Turner
, after the probate court approved the sale of the estate's stock holdings, a beneficiary brought a collateral action in federal court arguing that the executor sold the stock for less than the fair market value without having an appraisal. 166 F.2d at 309.  On appeal, the court held that the fairness of the sale price was not subject to collateral scrutiny in another court. 166 F.2d at 310.

As in 
Turner
, the beneficiaries in this case argued in the probate court that the sale price was inadequate and that the Bank should have retained experts to evaluate the business.  However, the Trustee's claims do not relate to the sufficiency of the sale price or the Bank's failure to properly ascertain the value of the business.  Therefore, 
Turner
 does not support the Bank's position.

The Bank's reliance on section 2--619(a)(3) of the Code of Civil Procedure is likewise misplaced.  That statute provides that a defendant may file a motion to dismiss a claim if "there is another action pending between the same parties for the same cause." 735 ILCS 5/2--619(a)(3) (West 1994).  The purpose of this statute is to prevent plaintiffs from bringing duplicative litigation in different forums. See 
Quantum Chemical Corp. v. Hartford Steam Boiler Inspection and Insurance Co.
, 246 Ill. App. 3d 557, 616 N.E.2d 686 (1993).

As stated above, the instant case involves issues unrelated to the objections raised by the beneficiaries in the probate court.  Since the Bank has not pointed to any action pending in the probate court which involves the same issues as those raised here, section 2--619(a)(3) does not apply.  We thus affirm the court's decision to strike the Bank's jurisdictional defense.

The Bank's Contribution Claim (3--96--0329)

With respect to its contribution claim, the Bank argues that the court erred by granting the Rudman Executors summary judgment.

The Joint Tortfeasor Contribution Act (Contribution Act) provides in relevant part as follows:

"(c) When a release or covenant not to sue *** is given in good faith to one or more persons liable in tort arising out of the same injury *** it does not discharge any of the other tortfeasors from liability for the injury *** but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.

(d) The tortfeasor who settles with a claimant pursuant to paragraph (c) is discharged from all liability for any contribution to any other tortfeasor." 740 ILCS 100/2 (West 1994).

Actions for contribution must be commenced within two years after the party seeking contribution made payment towards discharge of its liability. 735 ILCS 5/13--204 (West 1992).

The Bank and Rudman settled the claims against them in the federal lawsuit.  As such, Rudman was a settling tortfeasor and was discharged from all liability for contribution to any other tortfeasor.  The Bank correctly observes that a settling defendant may seek contribution from another tortfeasor whose liability to the plaintiff is also extinguished in the settlement agreement. See, 
e.g.
, 
Ziarko v. Soo Line R.R.
, 161 Ill. 2d 267, 641 N.E.2d 402 (1994).  However, this rule applies only if the tortfeasor against whom the contribution claim is made did not settle with the plaintiff.  Under the plain language of the statute, the settling tortfeasor may not seek contribution against another settling tortfeasor.

In addition, the Bank's corporate predecessor paid its share of the settlement to Sexton in November 1989, but the Bank did not file its counterclaim for contribution against the Rudman Executors until December of 1991.  Accordingly, the Bank's contribution claim is also time barred under section 13--204 of the Code of Civil Procedure. 735 ILCS 5/13--204 (West 1992).  We note that Rudman entered an agreement with the Bank before trial of the federal case in which he waived his right to rely on the statute of limitations as a defense in the event the Bank brought a contribution claim against him.  However, the agreement, by its express terms, applied only if a judgment was entered in the federal case.  Clearly, no judgment was ever entered.

Nevertheless, the Bank claims that its contribution claim is based upon its potential liability to the Trustee in the instant case rather than its liability in the federal case.  Thus, the Bank argues that its contribution claim is not barred by Rudman's settlement of the federal case.  The Bank also argues that its contribution claim was not barred by the statute of limitations.

We agree that if the Bank's contribution claim was unrelated to its liability in the federal case, then the claim would not be barred by section 2(c) of the Contribution Act or the applicable statute of limitations.  However, the Bank alleged in the counterclaim that each of the Trustee's claims is based on the sale of Brown-Specialty Company to Sexton and the resulting federal litigation.  Further, the Bank made several allegations in the counterclaim regarding Rudman's role in the sale of Brown Specialty Corporation.  The counterclaim is devoid of any factual allegations that are not related to the sale of Brown Specialty Corporation.  Accordingly, when the conclusory allegations are ignored, it is clear that the Bank's counterclaim is based upon Rudman's conduct in selling Brown Specialty and the Bank's resulting liability to Sexton.  Therefore, we affirm the court's order granting summary judgment in favor of Rudman on the Bank's contribution claim.

Indemnity (3--96--0565)

The Rudman Executors argue in their Rule 308 appeal that the court erred by denying their motion for summary judgment on the indemnity claims.

The trial court certified the following question, among others:

"Are the claims for indemnity by the plaintiff and First Illini against the Rudman Executors barred because the complaint in a certain federal action that was settled had charged fault against all parties?"

The issue of whether the Bank and the Trustee are entitled to indemnity is controlled by 
Dixon v. Chicago and North Western Transportation Co.
, 151 Ill. 2d 108, 601 N.E.2d 704 (1992).  In that case, the supreme court held that where one or more co-defendants settle a case under a complaint that charged them with fault, they cannot seek to shift that liability to another co-defendant under the theory of indemnity. 
Dixon
, 151 Ill. 2d at 122, 601 N.E.2d at 710.

In the case at bar, the Bank and Rudman settled the federal case.  The complaint in the federal case alleged that both the Bank and Rudman had committed securities violations, misrepresentation and fraud.  Clearly, the complaint charged both parties with fault.  Accordingly, the Bank's indemnity claim is barred by the holding in 
Dixon
.  Because the Trustee's indemnity claim was premised on the Bank's right to obtain indemnification from Rudman, its indemnity claim is also barred by the holding in 
Dixon
.  Moreover, the Trustee has no basis to obtain indemnity from the Rudman Executors because it did not incur any liability in the underlying federal litigation. See Restatement of Restitution §96 (1937) (indemnity applies only when a person without personal fault is subject to tort liability for the unauthorized and wrongful conduct of another).

Nevertheless, the Bank argues that its liability to the Trustee, if any, is vicarious liability based on Rudman's actions.  Thus, the Bank claims that it is entitled to indemnity against Rudman based on 
American National Bank & Trust Co. v. Columbus-Cuneo-Cabrini Medical Center
, 154 Ill. 2d 347, 609 N.E.2d 285 (1993) (a blameless principal held liable for the acts of its agent entitled to indemnity from the agent).  But the Bank cannot escape the effect of the 
Dixon
 holding so easily.

Although the Bank is seeking indemnity for its potential liability to the Trustee instead of its liability to Sexton, the Bank's indemnity claim is clearly based upon the same alleged tortious activity on the part of Rudman that was the subject of the federal case.  Since the bank settled that case with Sexton under a complaint that charged it with fault, the 
Dixon
 holding precludes the Bank from claiming that it was free from fault in order to recover from Rudman under the quasi-contractual indemnity theory that was applicable in 
American National Bank & Trust Co. v. Columbus-Cuneo-Cabrini Medical Center
, 154 Ill. 2d 347, 609 N.E.2d 285 (1993).

Accordingly
 For these reasons, the trial court's first certified question must be answered in the affirmative.  We therefore reverse the court's denial of the Rudman Executors' motion for summary judgment and enter judgment in favor of the Rudman Executors on the indemnity claims.  Because our resolution of the first certified question requires that we grant judgment in favor of the Rudman Executors, we need not address the other certified questions.

Rule 137 Sanctions (3--96--0324)

The Rudman Executors also argue that the trial court abused its discretion by denying their motion for Rule 137 sanctions.

Supreme Court Rule 137 provides in relevant part:

"The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact ***.  If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney fee." 134 Ill. 2d R. 137

The purpose of this rule is to prevent abuse of the judicial process by sanctioning parties who plead frivolous or false matters without any basis in fact or law. 
Fremarek v. John Hancock Mutual Life Insurance Co.
, 272 Ill. App. 3d 1067, 651 N.E.2d 601 (1995).  The party seeking sanctions bears the burden of proving that the opponent acted without reasonable cause. 
Johnson v. La Grange State Bank
, 73 Ill. 2d 342, 383 N.E.2d 185 (1978).  Courts should consider whether the challenged factual allegation is material to the cause alleged when determining the reasonableness of the allegation. 
Zander v. Whitney
, 242 Ill. App. 3d 523, 610 N.E.2d 779 (1993).  The decision to grant or deny sanctions pursuant to Rule 137 is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion. 
Fischer v. Brombolich
, 246 Ill. App. 3d 660, 616 N.E.2d 743 (1993).

In this case, both the Bank and the Trustee filed pleadings or motions which alleged that the federal court had entered a judgment.  It is objectively unreasonable for any attorney to make such an allegation without making some inquiry into the court record to ascertain whether the judgment was actually entered.  Such an inquiry should have included, at a minimum, a review of the federal court docket sheet.  Yet, the federal court docket sheet clearly explains that no judgment was ever entered.  Accordingly, it was objectively unreasonable for the Bank and the Trustee to allege that a judgment was entered by the federal court.

In addition, after they had been put on notice that they had made false allegations regarding the existence of a federal court judgment, the Bank and the Trustee denied the Rudman Executors' request to admit that no judgment in favor of the federal plaintiff had been entered.  Rather than conceding the obvious, the Bank and the Trustee continued to deny the existence of an easily verifiable fact.  This conduct clearly merits sanctions under rule 137.

Despite the foregoing, the Bank and the Trustee maintain that sanctions are inappropriate because the allegation that a judgment was entered in the federal case was not material.  However, their attempt to trivialize this matter does not hold up under scrutiny.

As discussed more fully above, the fact that the Bank and Rudman settled the federal case defeats the 
Bank's
 contribution and indemnity claims in the instant case. See 740 ILCS 100/2(d) (West 1994) (settling joint tortfeasor is immune from liability for contribution); 
Dixon v. Chicago and North Western Transportation Co.
, 151 Ill. 2d 108, 601 N.E.2d 704 (1992) (a defendant who settles a case under a complaint that charged fault cannot seek to shift that liability to a co-defendant under the theory of indemnity).  
Since the Trustee's indemnity and contribution claims were premised on the fact that the Bank had a right to indemnity and contribution from the Rudman Executors, those claims were likewise defeated by the fact that the Bank and Rudman settled the federal case.
  
Thus
Put another way
, the contribution and indemnity claims made by the Bank and the Trustee were viable only if the federal case resulted in a judgment against Rudman and the Bank.  Clearly, when a claim depends on a factual allegation for its viability, that factual allegation is material to the claim.

For the reasons stated above, we hold that the Bank and the Trustee violated Supreme Court Rule 137.  As a sanction for this violation, we hold that the Bank and the Trustee must pay the reasonable expenses incurred by the Rudman Executors, including attorney fees, from the time they denied the Rudman Executors' request to admit (May 1995) to the present.  We note that the prayer for relief in the Rudman Executor's brief sought attorney fees on appeal, but they filed no motion for fees pursuant to Supreme Court Rule 375, 155 Ill. 2d R. 375.
(footnote: 1)  Nevertheless, we hold that they are entitled to attorney fees on appeal, and we thus treat their motion for fees as both a Supreme Court Rule 137 motion and a Supreme Court Rule 375 motion. See 
Kennedy v. Miller
, 197 Ill. App. 3d 785, 555 N.E.2d 105 (1990) (Supreme Court Rule 137 motion requesting fees on appeal may be treated as a Supreme Court Rule 375 motion).  Accordingly, we reverse and remand for a determination of the amount of reasonable expenses and attorney fees incurred by the Rudman Executors and the relative share of that liability that should be borne by the Bank and the Trustee.

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

No. 3--96--0324--Reversed and remanded.

No. 3--96--0329--Affirmed.

No. 3--96--0330--Affirmed in part, reversed in part and remanded.

No. 3--96--0565--Reversed and judgment entered.

HOLDRIDGE and HOMER, JJ., concur.

FOOTNOTES
1:  The Rudman Executors did file a motion for attorney fees pursuant to Supreme Court Rule 375 on February 24, 1997.  However, this motion was based on matters unrelated to the allegations in their motion for fees under Supreme Court Rule 137.