No. 3--99--0778

_________________________________________________________________

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2001

NC ILLINOIS TRUST COMPANY, ) Appeal from the Circuit Court

as Trustee of the John ) for the 10th Judicial Circuit,

Golofsky Trust, ) Peoria County, Illinois

Plaintiff-Appellee ) 

Cross-Appellant, ) 

)

v. ) 

) No. 90--L--467

FIRST ILLINI BANCORP, INC., ) 

An Illinois Banking ) 

Corporation, Successor by )

Merger to First Galesburg )

National Band and Trust ) Honorable

COMPANY, ) Rebecca R. Steenrod 

Defendant-Appellant and ) Judge, Presiding

Cross-Appellee. )

_______________________________________________________________

JUSTICE BRESLIN delivered the opinion of the court:

_________________________________________________________________

Plaintiff NC Illinois Trust Company (Trustee), as trustee of the John Golofsky trust, filed suit against defendant First Illini Bancorp, Inc. (Bank), alleging that Bank breached its fiduciary duty as the executor of the 
trust
 
estate
.  The jury returned a verdict in favor of Trustee.  Bank appealed and Trustee cross-appealed.  For the following reasons, we  affirm in part and reverse in part.

FACTS

Bank became the executor 
and trustee
 of the Golofsky 
estate and 
trust after a corporate merger.  John Golofsky left a widow, Zoe Golofsky, and a daughter, Marilyn Urena.  Each received successive life estates under the trust.  Golofsky was also survived by two grandchildren, Jon Urena and Zoe Urena Weiss.  Both grandchildren were remainder beneficiaries under the trust.  When he died, Golofsky owned one-half of the common stock of Brown Specialty Corporation (Brown Specialty), and Mitchell Rudman owned the other half.

Rudman was designated the "point man" in selling the stock in Brown Specialty.  Rudman, Zoe Golofsky, and Bank agreed to sell the stock to Brown-SXTN, a company formed by John Sexton, for $1.6 million.  This sale price was approved by the probate court over the objections of the remainder beneficiaries, who believed the price was inadequate.  A stock purchase agreement, created by Sexton, was entered into by Bank as executor 
of the trust
 and Sexton.  

The agreement provided certain warranties that Brown Specialty’s financial statements were prepared in accordance with generally accepted accounting principles (GAAP), and that the statements fairly represented the company’s financial position.  The figures comprising the financial statements were provided by Rudman.  Before the agreement was executed, Zoe Urena Weiss’ husband, Zeff Weiss, on behalf of the remainder beneficiaries, sent a letter to Bank’s trust officer, Lane Smallwood, indicating that the warranties made in the stock purchase agreement were false. 

Smallwood consulted with Burrell Barash, an attorney often used by Bank, who recommended that Bank execute the sale agreement.  Bank, as executor of the Golofsky estate, received 50% of the sale proceeds which totaled $800,000.  Several months later, Brown-SXTN forwarded a letter to Barash alleging that the stock purchase agreement contained misrepresentations in connection with the sale of the Brown Specialty stock.  Sexton contended that the misrepresentations inflated the purchase price of Brown Specialty by $420,000.  Sexton eventually sued Bank, Rudman and Zoe Golofsky in federal court, alleging that the defendants committed securities violations and breached warranties contained in the agreement.   

Bank and Rudman were simultaneously represented by Barash over the objections of the remainder beneficiaries.  Zeff Weiss informed Bank that joint representation should not be undertaken because Bank should seek indemnification against Rudman in the event Sexton prevailed at trial.  Bank relied upon Barash’s advice that it was better to present a united front to avoid harmful finger-pointing.  Rather than file suit against Rudman for indemnity, Bank entered into an agreement with Rudman stating that Bank could later seek indemnity against Rudman and Rudman could not assert the statute of limitations as a defense.

The federal jury returned a verdict in favor of Sexton for $200,000 and assessed $50,000 in punitive damages against Rudman.  The court did not enter judgment, however, because the issue of attorney fees needed to be resolved.  Before resolution, the parties settled the case for $375,000, of which Rudman paid $212,500 and Bank paid $162,500.  Zeff Weiss contacted Bank to request that any judgment be paid by Bank and not from estate assets.  Still, Bank paid the settlement from estate assets.  Bank also paid Barash $29,743 for legal services in its representation of the estate generally, and $50,111 for the defense of the Brown-SXTN case out of estate assets.  Bank did so without notifying the beneficiaries 
of the trust
 because it believed they would object.

After the federal case was settled, Trustee filed suit against Bank on behalf of the remainder beneficiaries.  Count I sought actual damages based on professional negligence and/or breach of fiduciary duty.  Count II sought punitive damages based on the same alleged conduct in count I.  Bank brought an indemnity action against Rudman in the event Bank was found liable to the beneficiaries.  

Bank filed a motion for summary judgment which was granted by the trial court but later reversed by this court in 
First of America Trust Co. v. First Illini Bancorp, Inc.
, 289 Ill. App. 3d 276, 685 N.E.2d 351 (1997).  On remand, the jury returned a verdict in favor of Trustee, awarding $242,443 in compensatory damages.  The jury also awarded Trustee punitive damages in the amount of $1,375,232.  The trial court remitted those damages to $450,000.  Bank appealed and Trustee cross-appealed.

Additional facts will be set forth below as they become pertinent to the analysis.

ANALYSIS

A.  Bank’s Appeal

The first issue is whether the trial court erred when it denied Bank’s request for judgment notwithstanding the verdict on the basis that Bank satisfied the applicable legal standards for executors by relying upon the advice of outside legal counsel.

A judgment notwithstanding the verdict should be entered only when all the evidence, when viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on the evidence could stand. 
Pedrick v. Peoria & Eastern R.R. Co.
, 37 Ill. 2d 494, 229 N.E.2d 504 (1967).  We review a trial court’s decision to deny a motion for judgment notwithstanding the verdict 
de
 
novo
. 
Arellano v. SGL Abrasives
, 246 Ill. App. 3d 1002, 617 N.E.2d 130 (1993).

Bank claims that the court should have granted its motion for judgment notwithstanding the verdict because it reasonably relied upon the advice of Barash in signing the stock purchase agreement, in allowing Barash to represent both Bank and Rudman, and in using estate assets to satisfy the federal judgment against it.  For this proposition, Bank relies upon 
Jewish Hospital v. Boatmen’s National Bank
, 261 Ill. App. 3d 750, 633 N.E.2d 1267 (1994).

In 
Jewish Hospital
, the court stated that a bank has a right to hire an attorney to handle the legal affairs of the estate, and the bank has a right to rely on the attorney’s advice, unless the bank knowingly chooses incompetent counsel or has some reason to know that the given advice is not sound.

Trustee responds that Bank had reason to know that Barash’s advice was not sound.  The record supports that argument.  Smallwood, head of the trust department at First Illini, was himself an attorney specializing in trusts who acknowledged at trial that he was probably the best qualified attorney in Galesburg in the area of estate and trust administration.  It goes without saying then, that Smallwood believed himself to be more qualified than Barash with respect to this matter though he relied entirely upon Barash’s advice.  Though Smallwood got court approval to sell Golofsky’s share of Brown Specialty, the stock purchase agreement contained warranties and misrepresentations which were beyond the boundaries of the court order.  The beneficiaries of the Golofsky trust brought this to the attention of Smallwood, but he signed the stock purchase agreement without remedying the errors contained in it.  

In addition, Smallwood had independent knowledge that the agreement contained certain warranties that Brown Specialty’s financial statements were prepared in accordance with GAAP when, in fact, they were not.  Smallwood admitted reviewing a letter from the firm of Landy & Rothbaum which indicated that if GAAP had been used in preparing the financial statements, Brown Specialties’ land, building and stock holders’ equity would have decreased by $189,859.  Smallwood admitted that he did not have enough information to know whether the warranties and representations in the agreement were accurate, but he nevertheless signed it. 

The record reveals that Bank breached its fiduciary duties in other respects.  For instance, no one on behalf of Bank advised Zoe Golofsky not to sign the stock purchase agreement because, by doing so, she personally obligated herself, though she held no stock of her own.  Additionally, Bank was financing Sexton in his attempts to purchase Brown Specialty at the same time it was negotiating the purchase price on behalf of the estate.  

Bank also allowed Barash to represent Zoe Golofsky, Rudman and Bank despite the known conflict of interest.  Though Smallwood acknowledged that the potential indemnification claim against Rudman was an asset of the estate, Bank failed to pursue indemnification from Rudman on the estate’s behalf.  Still, Smallwood represented during trial that Bank filed suit against Rudman for indemnification on behalf of the estate when, in actuality, it filed such an action against him on its own behalf in the present action.  

But this is not all.  Smallwood admitted that he relied upon Rudman to turn over accurate accounting records for Brown Speciality despite having knowledge that Rudman had been convicted previously of making misrepresentations under oath.  Smallwood also acknowledged relying upon Rudman to sell Brown Specialty though he was unaware of whether Rudman was qualified to do so.  Rather, Smallwood expected Zoe Golofsky to be "up on" the business and to inform Bank if any problems with Rudman or the sale of the business arose. 

Adding insult to injury,
 Although Bank settled the federal lawsuit brought by Sexton under a complaint that charged Bank with fault, Bank used estate assets to pay that settlement.  This was true despite the fact that neither the trust nor the beneficiaries were responsible for the misrepresentations in the stock purchase agreement (
First Illini
, 289 Ill. App. 3d at 284, 685 N.E.2d at 357) and, in fact, the beneficiaries attempted to warn Bank of the existence of such misrepresentations.  Additionally, Bank paid Barash’s fees from estate assets for defending it in the Sexton lawsuit without informing the beneficiaries it was doing so because it was aware the beneficiaries would object.

Finally, in an obvious attempt to delay the filing of this lawsuit, Bank resisted repeated efforts by the beneficiaries to remove it as executor in order to sue on behalf of the estate 
and trust
.  Trustee was ultimately substituted in this case as plaintiff over Bank’s objections.

It is unnecessary for this court to expound upon the long-standing principle that a fiduciary is held to the highest standard of care and must act with undivided loyalty and the utmost fidelity. See 
Home Federal Savings & Loan Ass’n v. Zarkin
, 89 Ill. 2d 232, 432 N.E.2d 841 (1982).  While we are cognizant of the law as set forth in 
Jewish Hospital
, that a bank has a right to rely upon the advice of outside counsel, we cannot agree with Bank that it reasonably relied upon the advice of Barash when it signed the stock purchase agreement, when it allowed Barash to represent both it and Rudman, or when it used estate assets to pay the settlement with Sexton and to pay Barash’s legal fees for defending the lawsuit.  Rather, Bank was presented with substantial evidence that the advice was not sound.  Accordingly, we affirm the trial court’s decision denying Bank’s request for judgment notwithstanding the verdict on that basis.   

Bank also argues that the trial court erred in denying its request for judgment notwithstanding the verdict on the issue of punitive damages because Bank acted in good faith and its conduct was reasonable.

Punitive damages are appropriate only in cases where the wrongful acts in question are characterized by aggravated circumstances such as fraud, actual malice, deliberate oppression, wilful and wanton behavior or where the wrong involved some violation of duty springing from a relation of trust and confidence. 
Home Savings & Loan Ass’n v. Schneider
, 108 Ill. 2d 277, 483 N.E.2d 1225 (1985).  Bank suggests that because it acted in good faith in relying upon Barash’s advice, its conduct does not rise to the level of wilful or wanton which is required for a punitive damages award to stand.

We have already determined that Bank did not reasonably rely upon Barash’s advice; rather, Bank had more than enough reason to know that the advice was not sound.  Accordingly, we reject Bank’s argument that it should be absolved of the punitive damages award.

The third issue on appeal is whether the trial court improperly split the burden of proof between Trustee and Bank on count I of Trustee’s complaint.

In count I of its amended complaint, Trustee alleged that Bank was negligent and/or breached its fiduciary duty in various respects.  Bank contends that Trustee’s instruction No. 14 improperly split the claims in count I into two groups: those concerning the improper administration of the Golofsky estate (which Trustee was properly given the burden to prove pursuant to instruction Nos. 18 and 21) and those concerning the inappropriate use of the estate assets to settle the federal action (which Bank was improperly given the burden to disprove pursuant to instruction Nos. 15 and 19).

A trustee must act with the utmost fidelity and good faith with respect to the administration of the trust.  Accordingly, the trustee must not deal with the subject matter of the trust for his own benefit. 
White v. Macqueen
, 360 Ill. 236, 195 N.E. 832 (1935).  When this duty is breached, the presumption arises that the transaction at issue was fraudulent. 
Obermaier v. Obermaier
, 128 Ill. App. 3d 602, 470 N.E.2d 1047 (1984).  It is then the trustee’s burden to prove, by clear and convincing evidence, that the transaction was fair and that the trustee did not breach its duty of loyalty. 
Curtis v. Fisher
, 406 Ill. 102, 92 N.E.2d 327 (1950). 

Here, the jury was instructed of Trustee’s claim that the estate was damaged by Bank’s use of estate assets to settle the federal lawsuit and that Bank benefitted through the use of those assets.  It was also instructed of Bank’s defense that the estate did not suffer damages as claimed and that Bank acted in good faith.  The jury was then instructed that when an executor personally benefits from a transaction involving estate assets, the executor has the burden to prove by clear and convincing evidence that it acted in good faith.  Accordingly, before considering Bank’s evidence that it did not personally benefit through the use of estate assets, the jury necessarily had to first find Trustee’s claim to be true.  

The evidence presented at trial supports a finding that Bank benefitted when it used entrusted estate assets to satisfy the settlement of a complaint charging it with violating securities laws and breaching warranties in the stock purchase agreement.  The law is clear that Bank, as fiduciary, had the burden to prove by clear and convincing evidence that it acted in good faith in using estate assets.  Accordingly, the trial court did not err in instructing the jury as it did.

Bank also suggests that the trial court erred in modifying its instruction No. 17 when the court eliminated the provision of Illinois’ Pattern Jury Instructions, Civil, No. 20.01 (3d ed. 1995) stating that Bank denied it committed the alleged breaches of its fiduciary duty and instead inserted the following: "The defendant denies that the Estate of John Golofsky sustained damages to the extent claimed and asserts that it acted with good faith and common prudence."  

Initially, we note that it is within the sound discretion of the trial court whether to give a non-IPI instruction. 
People v. Moore
, 89 Ill. App. 3d 202, 411 N.E.2d 579 (1980).  We fail to see how Bank was prejudiced by the modification as claimed.  The jury was instructed on Bank’s theory that it acted in good faith and with common prudence, 
i.e.
, that Bank did not breach its fiduciary duty.  The presence of good faith and common prudence necessarily dictates the absence of a breach of fiduciary duty.  

Finally, Bank argues that the court erred in failing to give its instruction No. 30, which provided that "an executor is entitled to use moneys for the payment of liability to third parties which arise from litigation if the executor acted with good faith and common prudence."  Because we discuss below Bank’s suggestion that the trial court erred in prohibiting it from arguing that the settlement constituted a refund payable from estate assets, we reserve resolution of this issue for that discussion.  

The fourth issue raised by Bank is whether the trial court erred when it refused to allow Bank to explain why it believed it was proper to use estate assets to settle the federal lawsuit.

Prior to trial, Trustee filed a motion 
in
 
limine
 to prohibit Bank from presenting evidence explaining why it believed the federal action presented a claim for a partial refund from estate assets and, thus, why it used estate assets to pay the settlement.  The court granted Trustee’s motion.  Bank suggests the court erred in doing so.

We cannot agree.  Bank settled the federal suit under a complaint that charged it with breach of the warranties in the stock purchase agreement, various securities violations, fraud and misrepresentation.  When a party settles a complaint that charges it with fault, it can be inferred the party did so to avoid a finding of liability. See 
Dixon v. Chicago & North Western Transportation Co.
, 151 Ill. 2d 108, 601 N.E.2d 704 (1992).  This inference is even truer here where Bank settled only after a jury returned a finding of liability against it.

Thus, it was disingenuous for Bank to attempt to argue that the settlement simply constituted a refund of estate assets obtained from an inflated purchase price.  Additionally, Bank could not justify the over $50,000 it paid in attorney fees from estate assets as a "partial refund" of the purchase price.  Accordingly, we affirm the trial court’s decision to restrict Bank’s attempt to characterize the settlement as a refund of estate assets.  For the same reason, we affirm the trial court’s refusal to instruct the jury using Bank’s instruction No. 30. 

The fifth issue on appeal is whether the trial court erred in admitting evidence of the 1975 criminal conviction of Mitchell Rudman while excluding evidence of the criminal conviction of the decedent, John Golofsky.  Bank claims that evidence of Rudman’s criminal conviction for making certain misrepresentations in an Illinois cigarette tax filing were highly prejudicial and of no probative value. 

Trustee contends that evidence of Rudman’s conviction was relevant because Smallwood, who had knowledge of Rudman’s conviction, relied solely upon a semi-annual review of financial statements composed of figures provided by Rudman to determine the assets and operations of Brown Specialty.  Smallwood also testified that he knew the financial statements were unaudited compilations and were wholly dependent upon Rudman for their accuracy.

When a party seeks to admit a prior conviction involving dishonesty or false statements, the trial court must determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. 
Ryan v. Mobil Oil Corp.
, 157 Ill. App. 3d 1069, 510 N.E.2d 1162 (1987).  While evidence of a conviction more than 10 years old is typically not admissible to impeach a witness due to the danger of unfair prejudice (
Ryan
, 157 Ill. App. 3d at 1082, 510 N.E.2d at 1170), Trustee did not seek to admit the conviction to impeach Rudman’s credibility.  Rather, the conviction was used to show that Smallwood, having knowledge of it, had additional reason to question the veracity of the financial statements.  

We cannot agree with Bank that the admission of the conviction substantially prejudiced it.  Even assuming the conviction was erroneously admitted, other evidence existed for the jury to determine that Smallwood should not have executed the stock purchase agreement; namely, the beneficiaries’ notice to Bank of the misrepresentations contained in the agreement and the accounting firm’s letter indicating the financial statements were not prepared in accordance with GAAP.

Bank also contends that the court erred in excluding evidence that Golofsky was convicted of the same crime.  Bank does not explain, and we cannot comprehend, how it would help Bank’s case to show that Golofsky, who died before the transaction occurred, was also convicted of the same crime.  Accordingly, we affirm.

The sixth issue Bank raises is whether the trial court improperly instructed the jury concerning the agency relationship between Bank, Barash and Rudman.

Bank contends that the instructions relating to Barash and Rudman being agents of Bank were confusing, misleading and prejudicial.  Bank argues that because Trustee’s claims against it were for negligence and/or breach of fiduciary duty in its proprietary capacity, instructions pertaining to the acts or omissions of Rudman and Barash as agents for Bank in its capacity as executor were irrelevant to Trustee’s claims.

We disagree.  The federal case was tried on an agency theory with the jury being instructed that Rudman was the agent of the estate and, therefore, his acts were to be considered those of the estate.  Therefore, an action for indemnity against Rudman would have protected the estate.  While Smallwood acknowledged as much, no such action was brought.  Rather, any claim by the estate against Rudman for indemnity was forfeited when Bank settled with Brown-SXTN. See 
First Illini
, 289 Ill. App. 3d at 288, 685 N.E.2d at 360.   Consequently, it would be inequitable to allow Bank to deny the binding effect of the agency relationship in order to shift liability to Rudman, a party against whom the estate’s claim is now barred as a matter of law.

Additionally, evidence of an agency relationship between Bank and Barash was appropriately admitted.  While Bank attempts to suggest that it bears no fault because it relied upon the advice of its counsel, parties are bound by the acts of their attorneys as their agents. See 
Kaput v. Hoey
, 124 Ill. 2d 370, 530 N.E.2d 230 (1988).  Bank’s remedy, like any other client in Illinois who believes he received ineffective assistance, was to sue Barash in tort for malpractice (see 
Collins v. Reynard
, 154 Ill. 2d 48, 607 N.E.2d 1185 (1992)), which Bank did in fact do.  

Though Bank believes that evidence of its malpractice action against Barash’s estate should have been admitted, in light of Barash’s agency relationship with Bank we fail to see how Bank’s highlighting Barash’s alleged incompetence would benefit Bank as suggested. Because the agency instruction regarding Barash accurately states the law regarding his relationship to Bank during its administration of the Golofsky estate, we affirm the court’s issuance of the agency instructions.

The seventh issue we consider is whether the trial court erred in awarding Trustee equitable prejudgment interest.

In Illinois, prejudgment interest may be recovered when warranted by equitable considerations. 
In re Estate of Wernick
, 127 Ill. 2d 61, 535 N.E.2d 876 (1989). Whether equitable considerations support an award of interest is a matter lying within the sound discretion of the trial court. 
Wernick
, 127 Ill. 2d at 87, 535 N.E.2d at 888.  The rationale underlying an equitable award of prejudgment interest in a case involving a breach of a fiduciary duty is to make the injured party complete by forcing the fiduciary to account for profits and interest it gained by the use of the injured party’s money.  Fundamental principles of damages and compensation dictate that when money has been wrongfully withheld the victim receive interest for the wrongdoer’s retention of his money. 
Wernick
, 127 Ill. 2d at 87, 535 N.E.2d at 888. 

The jury determined that Bank breached its fiduciary duties when it used estate assets to settle the federal lawsuit and to pay Barash for his representation of Bank.  As we have already noted, there is no doubt that Bank benefitted from this transaction.  Accordingly, we affirm the court’s issuance of prejudgment interest.

B.  Trustee’s Cross-Appeal

The issue first raised by Trustee is whether the trial court erred in remitting the jury’s punitive damages verdict.  
Bank also takes issue with the court’s treatment of punitive damages and, accordingly, we address the parties’ complaints together. 

The jury returned a punitive damages award in the amount of $1,375,232.  The trial court remitted that award to $450,000, finding only that the evidence did not support the jury’s award. 

Trustee contends that the jury’s punitive damages award should be reinstated because, absent findings by the trial court which demonstrate that the verdict which was remitted was the product of passion or prejudice, it should not be disturbed.  For this proposition, Trustee cites 
Batterton v. Thurman
, 105 Ill. App. 3d 798, 434 N.E.2d 1174 (1982).  

Bank argues that this court should further remit the jury’s punitive damages award because its actions were reasonable in relying upon the advice of Barash.  In the alternative, Bank suggests this court should affirm the trial court’s remittitur of the award because section 2-1207 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-1207 (West 1998)), enacted subsequent to 
Batterton
, provides the trial court with absolute discretion to remit a punitive damages award.

While section 2-1207 does provide a trial court with the discretion to remit a punitive damages award, we cannot agree with Bank that such discretion is absolute.  Trial courts have long been given discretion to review the propriety of jury verdicts, but this court always has the authority to review that decision for an abuse of discretion. See, 
e.g.
, 
Keen v. Davis
, 108 Ill. App. 2d 55, 246 N.E.2d 467 (1969) (trial court’s decision to grant new trial on the basis that the verdict is against the manifest weight of the evidence is reviewed for an abuse of discretion).  Nor do we agree with Bank that section 2-1207 effectively abolished the law regarding remittitur as enunciated in 
Batterton
.

Subsequent to the passage of section 2-1207, the Illinois Appellate Court reiterated the 
Batterton
 court’s statement of the law of remittitur in 
Dahan v. UHS of Bethesda, Inc.
, 295 Ill. App. 3d 770, 692 N.E.2d 1303 (1998).  The 
Dahan
 court, like the 
Batterton
 court, noted that a trial judge does not have the power to speculatively and gratuitously negate a jury’s verdict.  Rather, where the record supports the jury’s verdict, a trial judge may not overturn such an award merely because she, for subjective and unknown reasons, would have computed damages differently. See 
Dahan
, 295 Ill. App. 3d at 782, 692 N.E.2d at 1311-12; 
Batterton
, 105 Ill. App. 3d at 805, 434 N.E.2d at 1178.     

In remitting the jury’s punitive damages award to $450,000, the trial court here made no specific findings nor did it determine that the jury verdict was the product of passion or prejudice.  Instead, the court stated only that it found the damages award to be excessive. 

This court has already set forth with particularity the evidence in the record supporting the jury’s finding that Bank repeatedly breached its fiduciary duty to the estate.  Because the trial court indicated only that it did not believe the evidence supported the verdict, this court has no way to review the propriety of that decision.  Case law dictates
 that when the record supports the jury verdict, the trial court must set forth its reasons for remitting that award. See 
Batterton
, 105 Ill. App. 3d at 805, 434 N.E.2d at 1178.  As the court here failed to do so, we reverse. 

While Bank would have this court remand this case to the trial judge so that she may set forth her reasons for remitting the punitive damages award, we do not believe that justice so requires.  Illinois views punitive damages as a punishment designed to serve three distinct purposes: (1) to act as retribution against defendant; (2) to deter defendant from committing similar wrongs in the future; and (3) to deter others from similar conduct. 
Ford v. Herman
, 316 Ill. App. 3d 726, 737 N.E.2d 332 (2000).  Important considerations in reviewing a punitive damages award include the nature and enormity of the wrong, the financial status of the defendant, and the potential liability of the defendant.  
Ford
, 316 Ill. App. 3d at 734, 737 N.E.2d at 339.

The enormity of the breach committed by Bank in signing the agreement despite its knowledge that the warranties in the agreement were false, in so subjecting the estate to liability, in allowing Barash to represent both it and Rudman despite the conflict, in failing to protect the estate by seeking indemnity against Rudman, and in using estate assets to satisfy its own liability cannot be questioned.  Additionally, Bank’s assets in excess of $48 million far exceed the punitive damages award of $1,375,232.  Accordingly, we cannot say that the award is so excessive that justice requires remanding this case to the trial judge.    

The next issue raised by Trustee is whether the trial court erred in denying its request for judgment notwithstanding the verdict for sums paid to Barash for legal services rendered in the general administration of the estate. 

Barash received $29,743 for legal services with respect to the administration of the estate generally.  This does not include the $50,111 paid for defense of the Sexton litigation.  The jury included the latter amount in its award of damages but not the former. 

Trustee contends that because Barash breached his fiduciary duty, he should not receive any attorney fees for the administration of the trust.  While it is clear Barash breached his duty to the estate when he recommended Bank execute the stock purchase agreement and when he represented Bank and Rudman despite the obvious conflict, and thus, he should not have been paid from estate assets to defend the Sexton lawsuit, it is not clear, and Trustee does not explain, what services Barash performed for the estate "generally."  Accordingly, this court cannot determine how the $29,743 figure was arrived at and whether it constitutes payment for legitimate services rendered.  Therefore, we affirm the trial court on this issue.

Finally, we determine whether the trial court erred in excluding evidence of investment potential and growth on sums wrongfully taken from the estate. 

Trustee contends that in calculating prejudgment interest, the court should have considered evidence of investment potential.  For this proposition, Trustee cites to 
Progressive Land Developers, Inc. v. Exchange National Bank
, 266 Ill. App. 3d 934, 641 N.E.2d 608 (1994).  

We do not find 
Progessive Land
 particularly helpful as that case concerned a land trustee who was found liable for selling real estate without the proper authority to do so.  The court did not consider, as we must here, an executor’s duty with respect to estate assets. 

In 
Wernick
, 127 Ill. 2d at 87-88, 535 N.E.2d at 888, the supreme court held that the statutory rate for prejudgment interest had not been changed to reflect the escalating interest rates in the market.  Accordingly, it was appropriate to award prejudgment interest at the prime rate.  But, there is nothing in 
Wernick
 suggesting that investment potential may be taken into account.  Additionally, while a trustee has a duty to invest and diversify, an executor has a duty to conserve estate assets.  
In re Estate of Pirie
, 141 Ill. App. 3d 750, 492 N.E.2d 884 (1986).  Therefore, we affirm the trial court’s decision to exclude evidence of investment potential. 

In conclusion, we note that any arguments raised by the parties within the context of the larger issues discussed throughout this order and not heretofore addressed are without merit and warrant no further discussion. 

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed in part and reversed in part.

Affirmed in part; reversed in part.

LYTTON and McDADE, JJ., concur.