(text box: 1) NO. 5-00-0634

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

In re
 ESTATE OF LOUIS J. MILLER, ) Appeal from the

Deceased ) Circuit Court of

 ) Perry County.  

(Thomas Miller, Special Administrator of the )

Estate of Louis J. Miller, )

)

Petitioner-Appellee and )

Cross-Appellant, )

v. ) No. 97-P-21

)

Emma Ford, Steve Ford, Sherri Ford, Mark )

Ford, Ronna Martin, Scott Ford, and Anthony )

Ford, )

)

Respondents-Appellants and )

Cross-Appellees, )

)

(Albert Miller, )

) Honorable

Interested Person-Appellee and ) William A. Schuwerk, Jr., 

Cross-Appellee)).   ) Judge, presiding.  

___________________________________________________________________________

JUSTICE GOLDENHERSH delivered the opinion of the court:  

Emma Ford, Steve Ford, Sherri Ford, Mark Ford, Ronna Martin, Scott Ford, and Anthony Ford (collectively respondents) appeal an order of the circuit court of Perry County requiring them to return funds to the estate of Louis J. Miller and to Albert Miller.  Thomas Miller (petitioner), as the special administrator of the estate of Louis Miller, filed a cross-appeal for funds that Emma Ford was allowed to retain.  Albert Miller filed a brief as an interested person for funds that the court determined were his personal property.  This appeal raises the following issues:  (1) whether the court erred in requiring respondents to return proceeds from certificates of deposit that had been held by Louis Miller individually, (2) whether the court erred in requiring respondents to return proceeds from checking accounts that had been held by Louis Miller, (3) whether the court erred in allowing Emma Ford to retain the proceeds from certificates of deposit she had held jointly with Louis Miller, (4) whether the trial court had jurisdiction to award funds to Albert Miller, and (5) whether the trial court erred in failing to award prejudgment interest.  We affirm.

I.  FACTS

On March 27, 1996, Louis Miller, at the age of 86 years old, signed a form giving his youngest sister, Emma Ford, a power of attorney pursuant to the Statutory Short Form Power of Attorney for Property Law (755 ILCS 45/3-1 
et seq.
 (West 1996)).  Between that date and Miller's demise a year later, numerous transactions occurred which benefited Emma Ford. 

On March 29, 1996, Emma Ford's name was added to Louis Miller's checking account at DuQuoin National Bank.  On April 3, 1996, Emma Ford inspected Louis Miller's security deposit box.  In the lockbox, she found several certificates of deposit and Louis Miller's last will and testament.  The certificates of deposit were held separately in Louis Miller's individual name, the joint names of Louis Miller and Albert Miller, the joint names of Louis Miller and Emma Ford, and the joint names of Louis Miller and Clara Hottes.  On April 25, 1996, she redeemed a certificate of deposit that had been held jointly in the names of Emma Ford and Louis Miller for $10,000, and she deposited the proceeds in her personal account. 

In early May 1996, Louis Miller was discharged from the nursing home and came to live at Emma Ford's home.  On May 9, 1996, Emma Ford used her power of attorney to surrender four certificates of deposit that had been held by Louis Miller individually.  She deposited the proceeds of these certificates in an account at DuQuoin State Bank in her name and the name of her son, Steve Ford.  She then distributed four checks from the account, each in the amount of $10,000, to Steve, to her daughter-in-law Sherri Ford, and to Emma's  grandchildren, Mark Ford and Anthony Ford.  On May 28, 1996, Emma Ford redeemed a certificate of deposit that had been held in the names of Louis Miller and Emma Ford jointly.  The proceeds of the certificate were distributed to Emma's grandchildren Ronna Martin and Scott Ford, in the amount of $5,000 each. 

In June 1996, Emma Ford redeemed a certificate that had been held in the joint names of Emma Ford and Louis Miller for $10,086.87.  She then distributed $5,000 each to Ronna Martin and Scott Ford and retained the remainder. 

On July 17, 1996, Emma Ford delivered to Citizens Bank in Du Quoin a signature card signed by her and Louis Miller.  The signature card added her name to a checking account at that bank.  After Miller's death, she closed this account and received $32,502.80.  On July 26, 1996, she delivered a deposit agreement signed by her and Miller adding her name to Miller's checking account at First National Bank of Pinckneyville.  After Miller's death, she closed the account and received $48,498.89.  On August 1, 1996, she delivered to Murphy-Wall State Bank & Trust Co. (Murphy-Wall Bank) a new signature card signed by both herself and Miller.  After Miller's death, she closed this account and received $19,725.62. 

On September 4, 1996, Emma Ford redeemed a certificate of deposit held in her and Louis Miller's names at First National Bank of Pinckneyville for $10,156.85.  On December 13, 1996, she directed DuQuoin State Bank to reissue a certificate that had previously been held in her name and Miller's.  She had the bank delete Miller's name from the new certificate and had it reissued in her name and the names of her two sons.  The certificate was valued at $10,020.50.  

Between January 6, 1997, and January 27, 1997, using her power of attorney, Emma Ford surrendered six certificates of deposit held in the joint names of Louis Miller and Albert Miller.  The proceeds of these certificates totaled $60,063.54.  On February 10, 1997, she surrendered a certificate of deposit at Charter Bank for $9,904.19 that had been held in Louis Miller's name only. 

On March 19, 1997, Emma Ford surrendered for payment a certificate held at Charter Bank in the name of "Louis Joe Miller, Trustee for Albert J. Miller."  She endorsed the certificate using her power of attorney for Louis Miller, and she received $20,238.40. 

On March 26, 1997, she surrendered three certificates of deposit at Murphy-Wall Bank.  The certificates were held in Louis Miller's individual name.  These certificates were endorsed by Emma Ford as Miller's attorney-in-fact, and she received $30,190.65.

Louis Miller died on March 27, 1997.  In April 1997, a petition for probate of will and for letters of testamentary was filed, and an order admitting the will to probate and appointing Emma Ford as the representative of the estate was entered.  A notice that the will had been admitted to probate was sent to the heirs and legatees.  Clara Hottes, Albert Miller, and petitioner filed a petition to terminate the independent administration and a petition for a citation on behalf of the estate and for the appointment of a special administrator.  The independent administration was terminated on July 23, 1998, and Thomas Miller was appointed the special administrator.  On January 20, 2000, petitioner, as the special administrator, filed a petition for a citation to recover property and related relief against respondents to recover certain money pursuant to the Probate Act of 1975 (Act) (755 ILCS 5/16-3 (West 1998)). 

A bench trial was held on August 4, 2000.  At the hearing, Emma Ford testified that in private conversations, Louis Miller had stated that he wanted her to have the certificates and his funds.  Emma Ford admitted that she did not disclose the transfers to other members of Louis Miller's family.  

Louis Miller's attorney, Roger Seibert, testified that he had consulted with Miller about Miller's estate plan and had prepared Miller's will.  Seibert testified that, as a part of his estate plan, Miller had established a number of joint accounts in order to avoid probate. 
 He testified that Miller intended for several relatives to benefit from his estate but that he was primarily concerned about Emma Ford.  Seibert testified that the transactions made by Emma Ford were consistent with his perception of Miller's concern for her and his desire to avoid probate.

After the proceedings, the court entered an order finding, in part as follows:

"(3) That a fiduciary relationship existed between Louis Miller and the respondent, Emma Ford, from March 27, 1996, until Louis Miller's death.  That the transfers made by Emma Ford between March 27, 1996, and March 27, 1997, are presumed to be fraudulent since Emma Ford and her family profited from said transactions.

(4) That Emma Ford failed to produce clear and convincing evidence to this Court that the challenged transactions were, in fact, gifts to herself and her family.

(5) That equity require[s] that Emma Ford, the estate of Louis Miller[,] and Albert Miller should be returned to the financial status prior to March 27, 1996."

The trial court ordered Steve Ford, Anthony Ford, Mark Ford, and Sherri Ford to pay back sums of $10,000 each to the estate for benefits they received in May 1996.   Ronna Martin and Scott Ford were each ordered to pay back $5,000 to the estate in regard to the certificate of deposit surrendered on June 16, 1996.  Emma Ford was ordered to pay to the estate $141,294.16 for various transactions made in 1996 and 1997. 

In regard to the certificates of deposit that were in the name of both Louis Miller and Emma Ford prior to Emma Ford gaining the power of attorney, the court found that joint tenancies had existed at that time and the court ordered that Emma Ford be allowed to retain the sum of $40,177.30 as the surviving joint tenant.

The court found fraud in the transfers of the six certificates of deposit that had been held in joint tenancy between Louis Miller and Albert Miller and in the transfer of the certificate of deposit that Louis Miller had held as the trustee for Albert Miller.  The court found that equity required that the money from these transfers should not be returned to the estate but should be the personal property of Albert Miller.  The court, therefore, ordered that a judgment be entered in favor of Albert Miller and against Emma Ford in the sum of $80,301.94.

II.  ANALYSIS

The parties classified the funds into four separate groups according to their condition prior to Emma Ford obtaining the power of attorney: (1) the certificates of deposit held by Louis Miller individually, (2) the certificates of deposit held jointly by Louis Miller and Emma Ford, (3) the certificates of deposit held jointly by Louis Miller and Albert Miller, and (4) the checking accounts.  The trial court's order adopted this classification, and we, likewise, do so for our analysis. 

A.  Certificates of Deposit Held by Louis Miller Individually

The record supports the trial court's finding that a confidential relationship existed between Emma Ford and Louis Miller.  As a matter of law, a fiduciary relationship was established when Ford obtained the power of attorney on March 27, 1996.  See 
Lemp v. Hauptmann
, 170 Ill. App. 3d 753, 757, 525 N.E.2d 203, 205-06 (1988); 
White v. Raines
, 215 Ill. App. 3d 49, 59, 574 N.E.2d 272, 279 (1991); 
Apple v. Apple
, 407 Ill. 464, 470, 95 N.E.2d 334, 338 (1950).

Because Emma Ford was Louis Miller's fiduciary and benefited from the surrender of certificates Miller held individually, a presumption of fraud arose.  The amount of evidence needed to overcome a presumption established by law is related to the strength of the presumption, and the procedural effect of the presumption is to dissolve once the burden of production is met.  
Franciscan Sisters Health Care Corp. v. Dean
, 95 Ill. 2d 452, 463, 448 N.E.2d 872, 877 (1983).  If a petitioner shows that a fiduciary relationship exists, any transaction between parties in which the agent profits is typically presumed to be fraudulent and the agent has the burden of proving by clear and convincing evidence that the transaction was fair and equitable and did not result from the agent's undue influence over the principal.  
In re Estate of Teall
, 329 Ill. App. 3d 83, 87, 768 N.E.2d 124, 129 (2002); 
Lemp
, 170 Ill. App. 3d at 757, 525 N.E.2d at 206.  Three significant factors that have been recognized as overcoming the presumption of fraud are (1) a showing that the fiduciary made a frank disclosure, (2) the fiduciary proves that he or she paid the fair value for property obtained, and (3) the fiduciary proves that the principal
 received competent and independent advice.  
In re Estate of Teall
, 329 Ill. App. 3d at 88, 768 N.E.2d at 130; 
Rizzo v. Rizzo
, 3 Ill. 2d 291, 304-05, 120 N.E.2d 546, 553 (1954).  

The record supports the trial court's finding that Emma Ford violated her fiduciary duties when she surrendered the certificates that were held by Louis Miller individually.  Respondents emphasize that there was a close relationship between Ford and Miller.  Respondents argue that Miller was legally competent and had negotiated the sale of his farm during this time.  Legal competency, however, does not by itself rebut the presumption of fraud.  
Pottinger v. Pottinger
, 238 Ill. App. 3d 908, 919, 605 N.E.2d 1130, 1139 (1992).  Respondents also argue that petitioner never presented any testimony that Miller had stated he did not wish to make the transfers.  The burden, however, was upon respondents to present clear and convincing evidence.

Emma Ford's testimony did not establish that the transfers were not fraudulent.  Ford testified on her own behalf that Louis Miller desired that she make the transactions.  The trial court could have found this testimony to be self-serving.  See 
Pottinger
, 238 Ill. App. 3d at 919, 605 N.E.2d at 1139; 
In re Estate of Nelson
, 132 Ill. App. 2d 544, 549, 270 N.E.2d 65, 68 (1971); 
In re Estate of La Rue
, 53 Ill. App. 2d 467, 474, 203 N.E.2d 47, 50 (1964).  The lack of independent verification through testimony by a disinterested party that Miller expressed such a desire weakens respondents' claim.  See 
Klaskin v. Klepak
, 126 Ill. 2d 376, 388, 534 N.E.2d 971, 976 (1989) (the lack of having a disinterested attorney question the decedent regarding his understanding of a transaction meant that the presumption was not overcome).

Similarly, the testimony of Louis Miller's attorney does little to support respondents' case.  Respondents point out that Seibert was Miller's attorney throughout this period and was not troubled upon learning of the transactions.  Seibert testified that Emma Ford contacted him on several occasions regarding her abilities to use the power of attorney, including her ability to cash certificates of deposit.  Seibert testified that Miller had expressed a desire to take care of Ford and had absolute confidence in her.  Nonetheless, Seibert's testimony did not indicate that a full and frank disclosure had occurred or that Miller had received independent advice. Seibert testified: 

"Q. MR. PROSSER [petitioner's attorney]:  Okay.  Now for the 12 months of the existence of the power of attorney from March 27[], 1996, to the date of Mr. Miller's death on March 27[], 1997, Mrs. Ford contacted you how many times to discuss the quantum and nature of her authority over Mr. Miller's property?

A. I would guess maybe a half a dozen times.

Q. But at no time in those six contacts did she ever inform you that she was surrendering property of Mr. Miller and taking the proceeds[,] is that right?

A. That's correct.

Q. And at no time in those six contacts were you advised by her that she was adding her name to accounts that he had maintained?

A. No.

Q. And at no time were you informed that she was surrendering certificates of deposit that he had established in his name and that of siblings of Louis Miller and keeping the proceeds for herself[,] is that right?

A. That's right."

The trial court simply found the evidence insufficient to overcome the strong presumption of undue influence.  The issue before this court is whether the trial court's finding was against the manifest weight of the evidence.  See 
Klaskin
, 126 Ill. 2d at 389, 534 N.E.2d at 976.  The trial court, as the trier of fact, is obligated to weigh and evaluate the evidence.  As an appellate court sitting in review, we must defer to the findings of the trial court unless they are clearly against the manifest weight of the evidence.  
In re Estate of Ferguson
, 313 Ill. App. 3d 931, 938, 730 N.E.2d 1205, 1211 (2000).  A review of the record supports the trial court's conclusion that, regarding the certificates held by Miller individually, respondents failed to rebut the presumption of fraud with clear and convincing evidence.  

B.  Checking Accounts

Respondents contend that the creation of joint bank accounts is a separate matter from the alleged abuse of the power of attorney, because Emma Ford did not use that power to create the accounts.  Ford's name was added to Louis Miller's accounts at Citizens Bank, First National Bank of Pinckneyville, and Murphy-Wall Bank.  Petitioner responds that a presumption of fraud exists because Ford was Miller's fiduciary, even if she did not use her power of attorney to open the accounts.

In 
In re Estate of Teall
, a neighbor became a decedent's fiduciary after the decedent had fallen at home.  
In re Estate of Teall
, 329 Ill. App. 3d at 85, 768 N.E.2d at 127-28.  The neighbor helped care for the decedent after the accident, helping with dressing and bathing, shopping, and household chores.  After the neighbor became the caregiver, she discovered that the decedent had not paid bills, maintained her house, or managed her affairs adequately.  The neighbor then converted some of the decedent's accounts to joint tenancy.  

The conversions took place over a period of time.  The court noted that some of the signature cards were signed by the decedent before she returned home from the accident and before the neighbor held a power of attorney.  In some instances, the decedent filled out signature cards in person at the bank.  In some instances, the neighbor brought signature cards to the decedent.  The neighbor did not contribute any money to the accounts.  The neighbor testified that she had never discussed whether the decedent wished for the accounts to have a right of survivorship.  

In affirming the trial court's decision that the funds belonged to the estate, the appellate court discussed the conflicting presumptions that were present.  The court first acknowledged that a presumption of fraud exists when a fiduciary benefits from a transaction.  The court recognized, on the other hand, that a presumption of donative intent arises when a joint tenancy is created.  
In re Estate of Teall
, 329 Ill. App. 3d at 87, 768 N.E.2d at 129 (relying on 
In re Estate of Harms
, 236 Ill. App. 3d 630, 634, 603 N.E.2d 37, 41 (1992)).  The court ruled that when the joint tenancy is created after the fiduciary relationship is established, the controlling presumption is one of fraud.  
In re Estate of Teall
, 329 Ill. App. 3d at 88, 768 N.E.2d at 13.  The court ruled that the trial court's finding was not against the manifest weight of the evidence, and consequently, the court affirmed on this issue. 

The record supports the trial court's finding that a presumption of fraud existed in regard to the checking accounts.  Similar to 
In re Estate of Teall
, Louis Miller had relied upon Emma Ford and had given her a power of attorney.  The fact that the power of attorney was not necessary for the checking account transactions, as was the case in 
In re Estate of Teall
, does not diminish the fact that a fiduciary relationship existed.  As with the transfer of the certificates of deposit held by Miller individually, the record does not indicate that this presumption was overcome.

C.  Certificates Held Jointly With Ford

On cross-appeal, petitioner contends that the trial court erred in allowing Emma Ford to keep the proceeds from four certificates of deposit that she had held jointly with Louis Miller prior to her obtaining the power of attorney.  The formation of a statutory joint tenancy creates a presumption of donative intent, and a party claiming adversely has the burden of proving by clear and convincing evidence that a gift was not intended.  
In re Estate of Harms
, 236 Ill. App. 3d at 634, 603 N.E.2d at 41; 
Murgic v. Granite City Trust & Savings Bank
, 31 Ill. 2d 587, 589, 202 N.E.2d 470, 471-72 (1964).  The fact that the certificates were discovered by Ford after she had the power of attorney does not negate the presumption that a gift was intended by Miller when the certificates were created.  The trial court correctly found that the presumption of fraud did not control, because Ford's interest in the certificates was created prior to her becoming Miller's fiduciary.  See 
In re Estate of Harms
, 236 Ill. App. 3d at 634, 603 N.E.2d at 41; 
In re Estate of Rybolt
, 258 Ill. App. 3d 886, 890, 631 N.E.2d 792, 795 (1994); 
In re Estate of DeJarnette
, 286 Ill. App. 3d 1082, 1088, 677 N.E.2d 1024, 1029 (1997).  

In 
Simon v. Wilson
, 291 Ill. App. 3d 495, 684 N.E.2d 791 (1997), a husband became the fiduciary of his wife during her declining years.  After he became her fiduciary, the husband transferred property that had been held in joint tenancy with his wife into a trust of which he was the sole beneficiary.  The trial court dismissed the husband on the ground that he would have succeeded to his wife's interest upon her demise if the transfer had not occurred.  The First District reversed on this issue, ruling that the transaction was presumptively fraudulent in that the husband breached a duty as a fiduciary by engaging in a transaction in which he benefited.  
Simon
, 291 Ill. App. 3d at 503, 684 N.E.2d at 797 (citing 
In re Estate of Rybolt
, 258 Ill. App. 3d at 889, 631 N.E.2d at 794).   

Due to an issue not presented to that court, we distinguish 
Simon
.  The 
Simon
 court relied upon a decision out of the Fourth District, 
In re Estate of Rybolt
, 258 Ill. App. 3d 886, 889, 631 N.E.2d 792, 795 (1994).  In 
In re Estate of Rybolt
, the court found that the presumption of fraud present when a fiduciary duty is violated outweighed the presumption of donative intent that arises from the creation of a joint tenancy; however, 
In re Estate of Rybolt
 also found the question of when the joint tenancy was created to be crucial: 

"We have an interesting conflict of presumptions in this case.  Our court in 
In re Estate of Harms
 [citation] held that where such conflicting presumptions exist[,] they cancel each other out, leaving the trial court free to make a determination based upon facts and credibility of the witnesses.  In 
Harms
, the argument related to accounts which were created prior to the fiduciary relationship and also involved income from other sources being deposited to the joint accounts while the fiduciary relationship existed.  In holding for the fiduciary, our court recognized that the deposits to the accounts followed a procedure used prior to the fiduciary relationship."  
In re Estate of Rybolt
, 258 Ill. App. 3d at 889-90, 631 N.E.2d at 794.

The court then noted that the amount of evidence needed to meet a presumption depends upon the circumstances of the case.  
In re Estate of Rybolt
, 258 Ill. App. 3d at 889, 631 N.E.2d at 795 (citing 
Franciscan Sisters Health Care Corp.
, 95 Ill. 2d at 463, 448 N.E.2d at 877).  In 
In re Estate of Rybolt
, the joint accounts were created after the respondent had gained the power of attorney.  The court found that the presumptions should not cancel each other out whenever a joint account is created after the fiduciary relationship has been established, because this would tempt fiduciaries to fatten their pockets through creative financial arrangements.  
In re Estate of Rybolt
, 258 Ill. App. 3d at 889, 631 N.E.2d at 795. 

The distinction between 
In re Estate of Rybolt
 and 
In re Estate of Harms
 was recognized by the First District in 
In re Estate of Teall
.  In 
In re Estate of Teall
, the court stated: 

"But in a later case, 
In re Estate of Rybolt
 [citation], the court limited 
Harms
 to apply only where the joint accounts were created before the fiduciary relationship began and where deposits made during the fiduciary relationship followed a procedure established before the relationship.  '[W]here the attorney-in-fact actively uses his position to create the joint tenancies[,] the presumptions do not cancel; instead, the controlling presumption is the presumption of fraud, which requires strong evidence to overcome.' "  
In re Estate of Teall
, 329 Ill. App. 3d at 88, 768 N.E.2d at 129-30 (quoting 
In re Estate of DeJarnette
, 286 Ill. App. 3d at 1089, 677 N.E.2d at 1029).

We find the distinction to be crucial.  If the joint tenancy was formed prior to the fiduciary relationship, the opportunity for abuse is not as great and, accordingly, the presumption of fraud does not need to be as strong.  In such situations, as in 
In re Estate of Harms
, the presumptions of donative intent and fraud cancel each other.  Because respondents did not have a burden to prove this claim by clear and convincing evidence, the trial court's decision to allow Emma Ford to retain this property is supported by the record. 

D.  Certificates of Deposit Held Jointly with Albert Miller

Respondents and petitioner contend that the trial court lacked jurisdiction to award a judgment in favor of Albert Miller.  This contention raises the related questions of whether the order was consistent with the proceedings and whether the trial court had statutory authority to enter its order based on the citation.  Respondents contend that the relief awarded was not properly pled because Albert Miller was not a named party in the citation proceedings, did not request any relief in the citation, and did not personally participate in the proceedings. Albert Miller contends that the issue was properly before the court.  

Albert Miller was an interested person under the Act.  See 755 ILCS 5/1-2.11 (West 1998).  Albert had a financial interest in the citation and was one of the petitioners who sought to have a special administrator appointed.  The issue was properly raised in the trial court.  Respondents were informed that the trial court would be determining the title to the certificates.  The certificates were attached to the petition, and the certificates were specifically addressed in the petition.  The petition asked the court to find the transfers to be fraudulent and for any relief the court deemed equitable.  At the trial, testimony was presented regarding the transfers and Albert Miller's interest.  

Respondents claim that the petition must specifically request the relief sought.  See 
Schlieper v. Rust
, 46 Ill. App. 3d 319, 325, 360 N.E.2d 1192, 1197 (1977); 
Lombardi v. Lepkowicz
, 28 Ill. App. 3d 79, 81, 328 N.E.2d 328, 330 (1975).  The Act allows a citation petition to be an instrument for discovery or to be an instrument for a petitioner to request the court to determine what property belongs to the estate.  755 ILCS 5/16-1 (West 1998).  The cases cited by respondents stand for the proposition that if a petition only asks the court to gather information regarding property, the respondent would be prejudiced if the court determined title.  

The court acted within its statutory authority in entering the order.  Respondents and the special administrator point out that the judgment in favor of Albert Miller represented the sum of the values of the certificates that were the personal property of Albert Miller and that the sum was not awarded as a part of the property of the estate.  The court was not limited to determining what belonged to the estate.  The Act gives broad powers to the court:

"The court may examine the respondent on oath whether or not the petitioner has proved the matters alleged in the petition, may hear the evidence offered by any party, may determine all questions of title, claims of adverse title[,] and the right of property[,] and may enter such orders and judgment as the case requires."  755 ILCS 5/16-1(d) (West 1998).  

The order was required by the court's finding.  The court found that the transfers by Emma Ford were fraudulent and that the transfers were nullities.  The formation of a joint tenancy was indicative of donative intent.  See 
In re Estate of Harms
, 236 Ill. App. 3d at 634, 603 N.E.2d at 41.  Prior to the fraudulent transactions, Albert Miller would have received the certificates upon the survival of Louis Miller.  The court placed Albert and the other parties in the position they would have occupied if Louis had met his demise at the moment prior to the fraudulent transactions.  To hold otherwise, the court would have allowed the fraudulent transfers to affect the parties' rights.  

The Act gives the court the authority to determine rights to property.  Similar to the court's determination that respondents were entitled to the proceeds of the certificates that Emma Ford had held in joint tenancy with Louis Miller, the court exercised its authority to determine the disposition of the certificates that Albert Miller held in joint tenancy with Louis Miller and the certificate that Louis held as a trustee for Albert.   

E.  Prejudgment Interest

Petitioner contends that the court erred by not requiring respondents to pay prejudgment interest.  Petitioner relies upon 
In re Estate of Wernick
, 151 Ill. App. 3d 234, 245-46, 502 N.E.2d 1146, 1154 (1986), 
aff'd in part & rev'd in part
, 127 Ill. 2d 61, 535 N.E.2d 876 (1989).  Although petitioner's argument would be supportable had the trial court ordered prejudgment interest to be paid, 
In re Estate of Wernick
 does not stand for the proposition that prejudgment interest is mandatory.  The Illinois Supreme Court recognized, on its review of 
In re Estate of Wernick
,  that this is a matter within the sound discretion of the trial court and that the trial court will not be reversed unless the discretion was abused.  
In re Estate of Wernick
, 127 Ill. 2d at 87, 535 N.E.2d at 888.

Whether equity requires an award of interest is a matter within the sound discretion of the trial court.  
Progressive Land Developers, Inc. v. Exchange National Bank of Chicago
, 266 Ill. App. 3d 934, 944, 641 N.E.2d 608, 616 (1994).  A court of equity has broad discretion in awarding interest and may give or withhold interest as is deemed equitable.  
NC Illinois Trust Co. v. First Illini Bancorp, Inc.
, 323 Ill. App. 3d 254, 265, 752 N.E.2d 1167, 1178 (2001); 
Zokoych v. Spalding
, 123 Ill. App. 3d 921, 938, 463 N.E.2d 943, 954 (1984).  The determination is a question of fact based on the circumstances of the case.  
Progressive Land Developers, Inc.
, 266 Ill. App. 3d at 944, 641 N.E.2d at 616.

In this case, petitioner fails to point to any document in the record where the issue of prejudgment interest was specifically addressed to the court.  Prejudgment interest was not specifically pled or argued before the trial court.  No testimony was presented on the subject or on the harm that would be done to the petitioner by a failure to award prejudgment interest.  The court order is silent on the issue.  Also, this case involved numerous transactions, some of which were found not to be fraudulent, as well as testimony that the fiduciary was a caregiver for the decedent.  Given the equities of the case, the trial court's failure to award prejudgment interest cannot be said to be an abuse of discretion.

III.  CONCLUSION

Accordingly, the order of the circuit court is hereby affirmed.

Affirmed.

MAAG, P.J., and WELCH, J., concur.

NO. 5-00-0634

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

In re
 ESTATE OF LOUIS J. MILLER, ) Appeal from the

Deceased ) Circuit Court of

 ) Perry County.  

(Thomas Miller, Special Administrator of the )

Estate of Louis J. Miller, )

Petitioner-Appellee and )

Cross-Appellant, )

v. ) No. 97-P-21

)

Emma Ford, Steve Ford, Sherri Ford, Mark )

Ford, Ronna Martin, Scott Ford, and Anthony )

Ford, )

Respondents-Appellants and )

Cross-Appellees, )

)

(Albert Miller, ) Honorable

Interested Person-Appellee and ) William A. Schuwerk, Jr., 

Cross-Appellee)).   ) Judge, presiding.  

___________________________________________________________________________

Opinion Filed
: October 2, 2002

___________________________________________________________________________

Justices
: Honorable Richard P. Goldenhersh, J.

Honorable Gordon E. Maag, P.J., and

Honorable Thomas M. Welch, J.,

Concur

___________________________________________________________________________

Attorneys
 Michael F. Dahlen, John R. Daly, Feirich/Mager/Green/Ryan, 2001

for
 West Main Street, P.O. Box 1570, Carbondale, IL  62903-1570

Appellants
 (attorneys for Emma Ford, Steve Ford, Anthony Ford, Mark Ford, 

and Sherri Ford); Aaron A. Atkins, 18 North Oak Street, P.O. Box 

1102, Du Quoin, IL  62832 (attorney for Scott Ford and Ronna Martin)

(adopted brief filed by Emma Ford, Steve Ford, Anthony Ford, Mark

Ford, and Sherri Ford)

___________________________________________________________________________

Attorneys
 Don E. Prosser, Gilbert, Kimmel, Huffman, Prosser, & Hewson, Ltd.,

for
 102 Orchard Drive, P.O. Box 1060, Carbondale, IL  62903-1060 

Appellees
 (attorney for Thomas Miller); Gayl S. Pyatt, 1 West Laurel Street,

P.O. Box 470, Pinckneyville, IL  62274 (attorney for Albert Miller)

___________________________________________________________________________

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 10/02/02.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.